## Matthewson *against* Saunders.

A testator devised to his son *A*, whom he made his executor, all his real estate, reserving to his wife the use thereof during her natural life; and in consequence of *A's* having such real estate, the testator directed him to pay, in one year after his decease, to his daughter *B* 333 dollars; gave *B* the use of certain parts of his dwelling-house, after the decease of his wife, with a right to pass and repass to and from, in and over said house, and on the farm; and also directed, that *A* should, at all times, provide *B* suitable fire-wood, ready cut to her hand, and put on logs, and annually supply her, at his own expense, with 100 *lb.* of good, well fatted pork; 8 bushels of good *Indian* corn; 4 bushels of good rye flour; 4 barrels of good cider put in her cellar; and carry any part of said corn and rye to mill, when requested. The testator further directed *A* to provide for *B* what apples, potatoes and sauce of all kinds, produced on said farm, she might necessarily want; to have yearly, by the 1st day of *April*, 12 *lb.* of good flax, well dressed, for her use; to keep on the farm for her, annually, 2 cows and 5 ewe sheep, to be kept as well as any cows or sheep on the farm; and *B*, moreover, was to have right to keep one hog, at her own expense, but to be pastured on the farm; to keep 4 or 5 dunghill fowls on the farm annually; and to live with her mother, and be entitled to all and every of

Windham,
July, 1835.

Saunders
v.
Mathewson.

the above privileges, during her living a maid. Some time after the death of the testator, *A* mortgaged the estate devised to him to two of his creditors, who took the deeds with notice of all the facts, and subject to the provisions of the will. They then sold from the farm all the hay and other produce raised thereon, neglecting to furnish *B* with the keeping of her cows and sheep, or to supply her from the farm with the other articles specified in the will. The executor and his surety in the probate bond, were insolvent. A bill in chancery being brought by *B*, who was still unmarried, for the benefit of the bequests, against *A* and those who claimed under him, it was held, on demurrer to the bill, that although bequests like these are never to be charged upon the real estate, unless such an intention be clearly expressed by the testator, it being deemed unwise and opposed to the policy of our institutions to raise charges upon real estate, by legal construction, and thus prevent a free and absolute disposition, where the intent to create them is doubtful, and the language of the devisor is equivocal, admitting of different interpretations ; yet in the construction of wills, the intention of the testator is the cardinal rule, which, if it can be clearly perceived, and is not contrary to some positive rule of law, must prevail ; and the intention of the testator in this case to create such charge, is clearly and satisfactorily inferable from the will ; as it was his object to make a permanent and secure provision for the support and comfort of his unmarried daughter, and the bequests were either the produce of the real estate, or were to be enjoyed upon it; and consequently, the demurrer was overruled.

THIS was a bill in chancery to obtain the benefit of certain bequests made to the plaintiff, by the will of her father *Israel Mathewson.*

The bill stated the following case. In *June,* 1815, *Israel Mathewson* made his last will and testament, containing the following clauses: "I give and devise unto my son *Israel Mathewson,* all my farm or real estate, on which I now live, reserving to my wife, *Lydia Mathewson,* the use and improvement of said real estate during her natural life." "In consequence of said *Israel Mathewson's* having the whole of my real estate, I furthermore ordain in this my will, that he pay, or cause to be paid, in one year after my decease, the following legacies to my four daughters, *viz.* to *Susanna Chandler,* 5 dollars ; to *Lydia Shepard,* 16 dollars ; to *Cepah Alton,* 16 dollars ; to *Phila Mathewson,* [the plaintiff,] 333 dollars, 34 cents. And furthermore, I give to the said *Phila,* after the decease of my wife, the following privileges, *viz.* in the house, the kitchen and the *East* part of the cellar, as far as the arch ; also the buttery and adjoining bed-room and chamber over the kitchen room, with a privilege of the use of the well and dooryard, with a right to pass and repass to and from, in and over

said house and on the farm. And also the said *Israel Mathewson* shall, at all times, provide the said *Phila* suitable fire-wood, ready cut to her hand, and put on logs, and annually supply her with the following articles, at his own expense, *viz.* 100 *lb.* of good, well fatted pork; 8 bushels of good *Indian* corn; 4 bushels of good rye flour; 4 barrels of good cider, put in her cellar; and carry any part of her corn and rye to mill, when requested. And said *Israel* is to provide for said *Phila* what apples, potatoes and sauce of all kinds, produced on said farm, that she may necessarily want; and to have yearly, by the first day of *April,* 12 *lb.* of good flax, well dressed, for her use. And said *Israel* shall keep on the farm for said *Phila,* annually, 2 cows, and 5 ewe sheep, said cows and sheep to be kept as well as any cows or sheep on the farm. And said *Phila* is to have right to keep one hog, at her own expense, and to live with her mother, and be entitled to all and every of the above privileges, during her living a maid. Said hog to be pastured on the farm. Also, to have right to keep 4 or 5 dung-hill fowls on the farm, annually." The testator appointed his son *Israel Mathewson* his executor; and died in 1821. The will was duly proved and established. The executor accepted the trust, and gave bonds according to law, and proceeded to settle the estate and pay the legacies. *Lydia Mathewson,* the widow of the testator, died before the year 1826. After her decease, the plaintiff, who then was, and still is, an unmarried maid, came into possession of the privileges given her by the will. On the 12th of *October,* 1825, *Israel Mathewson,* the executor, mortgaged the estate devised to him, by his father, to *Joshua Mason,* to secure a debt due him. On the 8th of *December,* 1825, he, the executor, conveyed his right in such estate to his son *Horatio Mathewson,* his surety in the probate bond. On the 27th of the same month, they both united in a mortgage to *Benjamin Bosworth,* to secure a debt due him. The grantees of these deeds respectively took them with full knowledge of the facts above stated, and subject to the provisions of the will. The estate in question is a rich and valuable tract of land, with two dwelling-houses and other buildings thereon, containing about 126 acres, and worth more than 3000 dollars. *Israel* and *Horatio Mathewson* are insolvent; and the latter has recently made an assignment of all his estate to *Oliver Saunders,* one of the defendants, in trust for his cre-

ditors ; such assignee being acquainted with the claims of the plaintiff. In the execution of this trust, he has taken and sold from the farm all the hay and other produce raised thereon, and has neglected and refused to furnish the plaintiff with the keeping of her cows and sheep, or to furnish her with the other articles she was to be supplied with annually from the farm.

*Windham,*
*July, 1835.*

Saunders
*v.*
Mathewson.

To this bill there was a general demurrer ; and the case was reserved for the advice of this court.

*Strong,* in support of the demurrer, contended, that some of the bequests to the plaintiff gave her a legal interest in the land, and the others were a charge upon the devisee personally, but not upon the land itself. The plaintiff, therefore, is not entitled to the aid of a court of chancery against these defendants.

In the first place, courts of chancery are not inclined to consider legacies as charges upon the real estate. *Swift* v. *Edson,* 5 *Conn. Rep.* 536. per *Hosmer,* Ch. J. *Gridley* & al. v. *Andrews,* 8 *Conn. Rep.* 5. per *Bissell,* J. If the legacies in this case were so considered, the alienation of any part of the real estate would be prevented, during the life-time of the plaintiff.

Secondly, such construction, when adopted, has been *ut res magis valeat quam pereat.* It is not necessary here, as the devisee is personally bound.

Thirdly, the terms of this will do not imply a charge upon the land. It is not devised upon condition, nor in consideration of the devisee's satisfying the bequests to the plaintiff ; but the land is given to the son, and "*in consequence of this,*" the testator ordains that he shall pay, &c.

Fourthly, if the claim of the plaintiff be correct, the devisee was subjected to the immediate payment of the debts of the testator, to an indefinite amount ; and to the payment of legacies, within one year, to the amount of 370 dollars, in consequence of his having the real estate ; but the bequests to the plaintiff are so charged upon the land, that he could not, during her life, sell or mortgage an acre of it to raise the funds to pay debts or legacies.

*Goddard* and *M'Clellan,* contra, insisted, 1. That by the provisions of the will the bequests to the plaintiff were a charge on the land. In the first place, these bequests were made *in*

*consequence* of the son's having the whole of the real estate. Secondly, every thing given to the plaintiff was either the produce of the land, or to be enjoye 1 on the land.

2. That the charge continues in the hands of a purchaser with notice. 2. *Sw. Dig.* 116 *Green* v. *Belcher,* 1 *Atk.* 506.

3. That a court of equity can give relief. The plaintiff has no remedy at law. A suit on the probate bond, if it were adapted to the case, would be fruitless ; as the principal and surety are insolvent.

HUNTINGTON, J. The only question raised by the demurrer to this bill, is, whether certain bequests to the plaintiff are a charge on the real estate devised, in the will, to the testator's son *Israel.*

The opinion which we entertain on this question, and which is soon to be expressed, does not embrace the legacy of 333 dollars, 34 cents ; it having been admitted, by the counsel, that a satisfactory provision for its payment, has been made : nor does it embrace any portion of what the testator denominates " privileges," which constitute a legal interest in the land and buildings ; for if she has been deprived of the enjoyment, or interrupted in the use of them, she has adequate remedy at law. The controversy between the parties, is confined to the other " privileges" granted to the plaintiff, and is limited to the single point, whether she can resort to the real estate devised to the son of the testator, (which has been conveyed by him to other persons, with full knowledge of the provisions of the will and of the claim now made by the plaintiff,) in a case where the devisee is insolvent; his surety in the bond to the court of probate for the due settlement of the estate of the testator according to the will, is also bankrupt; where there has been an entire neglect and refusal to provide for her conformably to the will ; and where all other means of obtaining such provision, have failed.

The principles which are to be applied to this case, have been so long and are so firmly established, as not now to be controverted. They are admitted by both parties, to be eminently just, and sustained by unquestionable authority : and the case turns upon the *proper application* of them, to the facts alleged in the bill, and admitted by the demurrer.

This court has repeatedly held, " that pecuniary legacies"

Windham, July, 1835.

Saunders
v.
Mathewson.

(and the bequests, in this will, to the plaintiff, may be considered as of that character, in reference to the question submitted to us) " are never to be charged on real estate, unless such an intention be clearly expressed, by the testator." *Gridley* & al. v. *Andrews* & al. 8 *Conn. Rep.* 1. " As to legacies, there must be a clear manifest intention that the devisee shall take subject to the legacies." *Swift* v. *Edson* & al. 5 *Conn. Rep.* 531. Such, also, are the decisions in *Great-Britain* and elsewhere. *Kightley* v. *Kightley*, 2 *Ves. jr.* 328. *Keeling* v. *Brown*, 5 *Ves.* 359. *Shallcross* v. *Finden*, 3 *Ves.* 738. *Lupton* & al. v. *Lupton* & al. 2 *Johns. Ch. Rep.* 614. This rule has been adopted, to prevent unreasonable restraints upon the alienation of real estate. It has been deemed unwise, and opposed to the policy of our institutions, to raise incumbrances and charges on real property, by legal construction, and thus prevent a free and absolute disposition of it, where the intent to create them, is doubtful, and the language of the grantor or devisor is equivocal, admitting of different interpretations. It is, however, equally the policy, the justice and the equity of our laws, to give effect to the intention of a testator, where it is lawful, consistent with the general rules of law, and declared with the necessary legal formalities. With these qualifications, the intent of the testator expressed in his will, as to the disposition of his property, is the law of alienation, to which courts are bound to conform, and which they are required to carry into effect. Our citizens are permitted to select the objects of their bounty, and to provide both the extent and the manner of its enjoyment. " The intent of the testator, is the cardinal rule in the construction of wills : and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail." *Finley* & al. v. *King*, 3 *Peters* 345. It is " a cardinal rule in the construction of wills, that the intention of the testator is to be sought after and carried into effect." *Id.* 113. *Judd* & al v. *Bushnell* & al. 7 *Conn. Rep.* 205. " It is undoubtedly true, that in giving a construction to a last will and testament, the intent of the testator is to prevail." *Gridley* v. *Andrews*, 8 *Conn. Rep.* 1. *Bull* & al. v. *Bull* & al. 8 *Conn. Rep.* 47. *Wigg* v. *Wigg*, 1 *Atk.* 382. This intention is to be collected from the *whole will*, and not from detached portions of it. This is a rule of construction equally applicable to wills, and other written instruments. *Jackson* d.

*Van Vechten* & al. v. *Sill* & al. 11 *Johns. Rep.* 201. *Jackson* d. *Herrick* & al. v. *Babcock*, 12 *Johns. Rep.* 389. 4 *Kent's Comm.* 534. *Mann* & al. v. *Mann* & al. 14 *Johns. Rep.* 1. *Westcott* & al. v. *Cady* & al. 5 *Johns. Ch. Rep.* 334. *Willett* v. *Sanford*, 1 *Ves.* 186. *Nightingale* v. *Sheldon* & al. 5 *Mason* 336. Although the real estate is not always, and as of course, charged with the payment of legacies, or other beneficial bequests, yet whenever the intention to create such charge, is declared, in express terms, or may be clearly and satisfactorily inferred from the whole will, reference being had to the language used, the dispositions made, and the objects contemplated by it, full effect will be given to the intention, and the real estate will be made applicable to the payment of the legacy or bequest, whenever, and so far as, it is necessary to enable the legatee to enjoy the bounty of the testator.

With these principles in view, an answer to a single enquiry, disposes of the whole case. Does it clearly and satisfactorily appear, from the will of *Israel Mathewson*, that it was his intention to charge the real estate devised to his son, with the payment of such of the bequests, or, as they are called, "privileges," given to the plaintiff, as are the subject of the present controversy?

We think such intention does so appear, and that any other construction of the will, would do violence to the language of the testator, and defeat his benevolent object of making a permanent and secure provision for the support and comfort of his unmarried daughter.

It is very clear, that *some* of the bequests, are made a direct charge on the real estate, because they are the produce of it. The son is to provide for the plaintiff, "what apples, potatoes, and sauce of all kinds, *produced on said farm*, she may necessarily want." Two cows and five sheep are to be kept *on the farm*, by the devisee, for the plaintiff, and are "to be kept as well as any cows or sheep *on the farm*." The swine and fowls, for her use, are also to be kept on the farm. She has a clear and indisputable right, by the terms of the will, to have such use of the farm, (through the devisee of it,) as is necessary for the above purposes. The intent of the testator, in this respect, is expressed in language clear and explicit. We think it not less clear and satisfactory in relation to the other bequests. It was, obviously, his expectation that the son and daughter

would live on the farm ; and it was his intention to provide for the latter, a home, and a comfortable and permanent support. His other daughters were married ; and to them, small pecuniary legacies only, were given. The plaintiff required more aid than her sisters. She was unmarried, and had no home but the paternal mansion, and no means of support, except such as should be provided, by parental kindness and affection. The testator, therefore, appropriates a part of the dwelling-house and appurtenances, for her use ; directs the devisee to furnish her with fuel ready for use, and to perform the labour of " putting on the logs ;" and then makes provision for the supply of articles of food for her sustenance and comfort ; all of which are such as are ordinarily raised on the farm. The " cider is to be put into her cellar, and her grain to be taken to the mill to be ground, whenever requested." In all this, the intention is apparent, to provide for her support, on and from the farm. There, she is to reside ; over it, she is permitted to pass at pleasure ; and from it, through her brother, the devisee of the real estate, she is to derive what her father deemed a suitable, reasonable and permanent support. He designed to make the *whole* provision secure to her. It cannot be supposed, that he intended to discriminate between different portions of it, and to create a charge on the land, in favour of the plaintiff, as to the vegetables, the keep for the cows, sheep, swine and fowls, and not as to the other articles with which she was to be furnished. However inartificially this will may have been drawn, and though it bears the marks of having been written, by a man whose language is far from being always accurate, we cannot infer, that the testator intended his daughter should be fully protected in the enjoyment of the small benefits (which he certainly made a charge on the real estate,) and left to depend, for the principal part of her support, on the personal responsibility of her brother. The whole structure of the will, its language and object, are opposed to such a construction. No obligation was imposed on the son, merely as executor, to pay these bequests. The testator did not contemplate the payment of them, in that character. It was made his duty to provide for the plaintiff, " in consideration of his having the whole real estate." The provision was designed as one which she could realize and enjoy. It was not made subject to contingencies ; was connected with the use of the farm, to arise from the improvement of

*Windham,*
*July, 1835.*

*Saunders*
*v.*
*Mathewson.*

it ; and was to be enjoyed so long as the testator supposed the necessity of continuing the provision might exist, until she married and had another home, and a legal right to support and maintenance from another source.    We think, that in this construction, which we give to the will, making the bequests contained in it, to the plaintiff, which are the subject of the present controversy, a charge on the real estate devised to the son, we follow the expressed intent of the testator ; promote the meritorious object he had in view ; do but a mere act of justice to the plaintiff ; and apply to the devisee of the real estate and those who claim under him, the equitable rule which this court applied to a defendant in another case :   "He who accepts a benefit under a will, must conform to all its provisions, and renounce every right inconsistent with them."   *Judd & al. v. Bushnell & al. 7 Conn. Rep.* 205.

Our opinion is, that the bill is sufficient, and that the demurrer should be overruled : and the superior court is to be so advised.

WILLIAMS, Ch. J. and BISSELL and WAITE, Js. were of the same opinion.

CHURCH, J. not being present at the consultation, gave no opinion.

Demurrer to be overruled.