Avery, J.
It is shown by the agreed statement of facts, that only a few days after the passage of the act, to wit: on the 24th of May, 1826, the Commissioner of the General Land Office issued a circular to the Registers of the several Land Offices in the United States, in which instructions were given for the selection of the Lands appropriated by the act. In this circular, a copy of which was received by the Register of the Chillicothe Land District, instructions were given to the Register, to cause selections of land to be made under the provisions of the act, and to forward a list of such selections to the General Land Office, to be submitted to the Secretary of the Treasury for his apprabation ; and in making the selections the following rules were to be observed:
*285 First. In all cases where the lands have not been offered at public sale, you will make the selection previous to the and within the fractional township.
Second. Where the lands have been heretofore disposed of, or offered at public sale, you may make the selections either within the fractions, if there be a sufficiency of unsold lands of good quality, or of any other lands within your Land District, which have been offered at public sale.
Third., In all cases where the lands have, been offered at public sale, and where there are persons duly authorized by the State or inhabitants of a township to take charge of the school land, it would be proper to permit such persons to make the selections, provided it be done in a reasonable time.
In obedience to the requisitions of the circular, the Register addressed a letter to the Commissioners of the county of Lawrence, requesting them to maké and forward to him a selection for the fractional townships, for the purpose of being transmitted to the General Land Office, and the commissioners, through their agent, selected the south-east quarter of section 15, township 3, range 16, as the school lands for township 1, range 19. This quarter contains 160 acres, and is the land now in controversy. The selections made by the agent of the County Commissioners of Lawrence county, including the aforesaid S. E. quarter of section 15, for township 1, range 19, were returned by the Register, according to the directions of the circular, to the General Land Office, and were submitted to the Secretary of the Treasury, and finally, the selection of this tract, together with others, was approved and confirmed by the Secretary of the Treasury^ acting under the above recited law of Congress, and measures were taken to designate this tract as appropriated for the support of schools.
Proceedings, such as have been noticed above, if regularly conducted, would operate to pass the legal title of the United States to this quarter section of land ; which would thereafter be held by the same tenure, and upon the same terms as Section 16 was held by the State of Ohio. And section 16, by *286 the act of Congress passed March 3d, .1803, was vested in the of the State, in trust for the use of schools. Land part I, p. 88. By a law of Ohio, relating to original surveyed townships, provision is made that three trustees and a treasurer shall be elected for the purpose of taking into their care the school lands, and they are constituted a body corporate, capable of suing and being sued, and vested with other powers over said lands. Swan’s Statutes, 957.
From the acts of Congress, above referred to, the proceedings of the Secretary of the Treasury of the United States, so far as yet noticed in this opinion, and the Statute mf Ohio aforesaid, the right of the plaintiff to recover this land in an action of ejectment, would seem to be sufficiently established.
But it appears by the same agreed statement, that on the 8th of April, 1833, Robert Hamilton, for himself and the other defendants to this suit, entered this same quarter section of land, paid for it, and took from the Register of the Chillicothe District Land Office, a certificate of purchase. No patent, however, was issued to Hamilton, and he has been since notified by the Register of the Chillicothe land office, that the purchase money will be refunded to him by the United States.
It is submitted to the Court by the agreed statement, to determine which party has the better right to this land', the plaintiff by virtue of the selection, or the defendants under their entry.
It will be seen from the instructions sent to the Register of the Chillicothe Land'Office, that he was to note by a pencil mark in his tract book, and on the plat of the townships, the lands recommended to be reserved under the act, and to withhold them from sale until officially advised either of their approval or rejection. This appears in a Circular, of the date of August 30,1832 ; and this tract had been, after the selection, withheld from sale. The circular of 1832 expressly namesthe circular of the 24th of May, 1826, and states that, as it had not been accompanied with a prescribed form for reports, a diversity of forms had been adopted at the different offices. With the last circular was transmitted a supply of forms, to secure uniformity, *287 and the Register was requested to report all the selections before reported, including those which had been approved, , . • those which had not up to that tune been sanctioned; all selections to be embraced in one report, and to be marked No. 1.
The tract in controversy, with other lands, had, previous to this circular of August 30,1832, been reported by the Register as selected; but on the 7th of March, 1833, he addressed a letter to the Commissioner of the General Land Office, containing, amongst other things, the following inquiries:
“ 1st. Does the fact of my having reported them (the selected lands) to your office take them out of the general rule prescribed for my government, and if not —
,2d. Shall I consider all the selections heretofore made as void, and have them made in exact conformity to the instructions ? ”
To this letter a reply was sent by the Commissioner of the General Land Office, dated on'the 19th of the same month, (March) wherein he says: “ That as there has been no action of the Department on these selections, you are at liberty to withdraw them and select other lands in their stead.”
Soon after the date of this reply, on the 6th of April, 1833, Hamilton entered the quarter section in dispute, and obtained a certificate of purchase from the Register. The circular of August 30, 1832, had given to the Register express directions to report all the previous selections under the law, and we are unable to discover how there could be any doubt about the intention carefully to preserve these selections. The act of Congress provided for a choice amongst all the unappropriated lands of the district, to promote the object contemplated, the support of schools; and the Secretary, in order to secure the full benefit designed, had taken immediate measures to select the lands. The quarter section in controversy, was a very valuable tract. Hamilton knew that it had been selected as school land, in behalf of the township, and withheld from entry ; he had attempted, indeed, to purchase it from the township. In this state of *288 the case, Hamilton could not become a bona fide purchaser of the land, until it was relinquished by orders proceeding from the of the Treasury. His being informed by the Register that it.had been relinquished, when it had not been so in reality, and in the mode required, would not enable him to secure an equitable title to it. And here, the very authority under which the Register assumed to act, upon attempting to subject this land-again to entry, which had for several years been withheld, might have satisfied both him and Hamilton that the land was not, at the time, subject to entry. The authority stated that there had been no action of the Department on the selections. The Secretary was the only person designated to make the selections, and no subordinate officer, without authority from him, could act. No subordinate officer could reject this land, any more than he could make a final selection of it. This the defendant, Hamilton, knew, from the terms of the act of Congress, or must be supposed to have known. It was incumbent, therefore, upon him, before he could claim the rights of a purchaser, without notice, to possess information that the land had been rejected by the Secretary.
If the defendant, Hamilton, had purchased this tract of land from a private individual, who was the owner of the fee, under circumstances like those attending the present case, and taken an agreement to convey the title at some future time, he would have held only an equitable title to the land; and an equity, with such knowledge, of a prior adverse claim to it, as would not warrant a decree for specific execution. Hamilton, by his purchase, secured nothing more than an equitable title, the fee still remaining in the United States; and the officers of the Government taking good care to prevent any action by which the legal title could pass to him.
All the acts of the Secretary of the Treasury, and of all the subordinate officers of his department, from the time of first designating the tract to the final confirmation of the legal title, with the exception of this single attempt of the Register to treat the land as liable to entry, have been in conformity with the original purpose of selecting it for the use of schools.
*289 The intent so manifested, and the several acts under the Secretary of the Treasury, as detailed above, including his final selection of the land, have, in the opinion of the Court, the legal title in the plaintiff, and shown that there is not any equitable claim to the land in the defendant.
The plaintiff is entitled to recover, and the judgment of the Common Pleas is reversed.
The same judgment will be rendered in this Court, as should have been given in the Common Pleas.

Judgment for the Plaintiff.