Filed April 26, 1884.

---

No. 11,368.

## PORTER *v.* JACKSON ET AL.

WILLS.—*Devise.—Legacy.—Equitable Lien.*—When lands are devised to one who, by the will, is directed to pay a legacy, the legacy is a charge upon the lands devised, and when payment of the legacy is made a condition of the devise, its acceptance creates also a personal liability to the legatee which may be enforced without resorting to the land, the lien still remaining as a security.

SAME.—*Receiver.—Complaint.—Appeal, Plea in Bar of.*—Lands devised to several, on condition that if they took they should pay a certain legacy, were, upon suit for partition to which the legatee was not a party, sold by a commissioner by order of the court, for full value, paid upon being

appraised as unencumbered. While the money remained in the custody
of the court, the purchaser brought suit against the devisees and legatee
to quiet his title as against any lien for the legacy, or to charge it pri-
marily on the fund in the custody of the court, averring the foregoing
facts by his complaint, and also that the devisees were insolvent.

*Held,* that the complaint was good on demurrer, to compel resort to the
fund in court primarily to satisfy the legacy, and for the appointment of
a receiver to take charge of the fund and so apply it, unless the devisees
would secure such application by sufficient bond.

*Held,* also, that a plea in bar of the appeal to the Supreme Court by the
plaintiff below, averring that after the appeal he purchased the shares
of some of the devisees in the fund in court, was bad on demurrer.

From the Decatur Circuit Court.

*F. Winter, J. D. Miller* and *F. E. Gavin,* for appellant.

*W. A. Moore, M. D. Tackett, B. F. Bennett, J. K. Ewing*
and *C. Ewing,* for appellees.

Zollars, J.—The will of William Jackson was probated
in 1869. By this will, the testator gave to his wife all of
his property, real and personal, so long as she should remain
his widow. Upon her marriage or death the property was
devised to his seven children, one-seventh to each. The
will contained the following provision : " I further will that,
as a condition of the acceptance of the property thus devised to
my heirs, they, on their part, shall support and maintain Eliza
Andrews, during her natural life, or until she shall marry."

The widow died intestate, in March, 1882. There was no
administrator upon the estates of the testator nor widow.

It does not appear that any of the personal estate came
into the hands of the devisees. After the death of the tes-
tator, Mrs. Clark, a daughter and one of the devisees, died
intestate, leaving surviving a husband and six minor chil-
dren. In April, 1882, appellee Samuel L. Jackson insti-
tuted an action for a partition of the land devised. All of
the living devisees, and the said heirs at law of Mrs. Clark,
were made parties defendants. Eliza Andrews was not a party.
An interlocutory judgment was made, fixing the rights and
interests of the several parties to the action, and ordering a

partition. Subsequently, such proceedings were had that a commissioner was appointed to sell the land. Under and pursuant to the order of court, the commissioner had the land appraised as unencumbered, and on the 27th day of October, 1882, sold the same, at public sale, for the full amount of the appraisement, viz., $5,425. Appellant was the purchaser. The sale was reported to and confirmed by the court in December, 1882. At that time, a deed to appellant was ordered, executed by the commissioner, and approved by the court. The proceeds of the sale were in the hands of the commissioner when this action was commenced. Prior to the commencement of this action, a controversy arose as to the proper construction of the will. Eliza Andrews claimed that the will made her support a charge upon the land, although she had the right also to look to the devisees personally. The devisees claimed that the land was the primary and only fund to which Eliza Andrews could look for such support.

Appellant claimed that the land is not liable at all, having been sold and he having purchased without actual notice, and that, if liable at all, it is only in the way of security, and that the legatee, Andrews, must resort first to the personal liability of the devisees and the fund in the hands of the commissioner.

These are the facts, substantially, as set up in appellant's complaint. In addition to these facts, it is charged in the complaint that the devisees living and the heirs of Mrs. Clark, are all insolvent, and that some of them are intending to remove from the State.

This action was commenced against the devisees living, the heirs of Mrs. Clark, and Eliza Andrews, to quiet the title to the land as against all claim for the support of the legatee Andrews, and to charge that support upon the devisees and the fund in the hands of the commissioner. The main purpose of the action, as shown by the complaint and the argument of appellant's counsel, is to charge the support

Porter v. Jackson et al.

upon the fund thus in the hands of the commissioner, and to require the devisees, if allowed to draw the fund, to give bond that the amount of it shall be applied to that support, if required; or that the court appoint a receiver to take charge of the fund for the benefit of the legatee. After the commencement of this action, Eliza Andrews was adjudged insane, and a guardian appointed for her. The guardian was made a party defendant. Demurrers to the complaint were filed by all of the defendants, which were sustained.

Do the facts stated make a case for any such relief as is asked? To narrow the case to the real question discussed by counsel, and the only one we need decide on this appeal, Has appellant, upon the facts stated, a right to an order and decree for the retention of the funds in the custody of the court, for the support of the legatee, or has he a right to an order and decree, that in case the devisees are allowed to receive that fund, they shall give a bond or bonds that it shall be applied to the support of the legatee, if required?

We learn from appellees' answer to appellant's assignment of errors in this court, that since this appeal was taken the commissioner has made his final report to the court below, in which he states that appellant purchased of two of the devisees their interest in the fund, arising from the sale of the land, and retained out of the purchase-money for the land, the amount of the interests thus purchased. We do not think that this is sufficient to bar the appeal. Nor do we think that this fact would have affected appellant's right to the relief asked, had it appeared in the complaint, if he was otherwise entitled to such relief. As to whether or not, in any possible future controversy, the purchase from the devisees may affect rights as between them and appellant, we need intimate no opinion.

The will, as we have seen, provides that as a condition of the acceptance of the property devised, the devisees shall support and maintain Eliza Andrews. The rule is well settled that, where real estate is devised to the person who, by the

will, is directed to pay a legacy, such legacy is an equitable charge upon the real estate so devised. *Lindsey* v. *Lindsey*, 45 Ind. 552; *Wilson* v. *Piper*, 77 Ind. 437; *Cann* v. *Fidler*, 62 Ind. 116; *Wilson* v. *Moore*, 86 Ind. 244; *Castor* v. *Jones*, 86 Ind. 289; *Nash* v. *Taylor*, 83 Ind. 347.

This is conceded by counsel in this case. It is further conceded, in argument, that as the will was probated and of record, and as Eliza Andrews was not a party to the partition proceedings, the equitable charge for her support was not destroyed by the sale to appellant.

We think it equally clear that the acceptance of the property, under the will, imposed a personal obligation upon the devisees to furnish the support to the legatee, and that she may enforce that obligation by a suit, and recover a personal judgment. The acceptance of the property under the will implied a promise to furnish the support. That support seems to have been the consideration for the property devised. It is expressly made the condition to the vesting of the title to the property. It seems to be plain that the testator intended to impose a personal charge upon the devisees.

In the case of *Harris* v. *Fly*, 7 Paige, 421, which arose under a will similar to that under consideration, Chancellor WALWORTH, in speaking of the legacy, and the liability of the devisee, said : "By the will, the payment thereof is charged upon him personally; and he has received the land as an equivalent for the payment thereof, although for the protection of the rights of the legatees, this court gives them an equitable lien upon the land itself as an additional security." This case was cited and approved by this court in the case of *Lindsey* v. *Lindsey*, *supra*. The same doctrine was held in the case of *Cann* v. *Fidler*, *supra*.

The case of *Burch* v. *Burch*, 52 Ind. 136, was an action by a legatee against a devisee of the land for the amount of the legacy. It was held that while the legacy was a charge on the land devised, the devisee was also personally liable upon an implied promise to pay. See, also, the cases cited in this

case. *Dodge* v. *Manning,* 11 Paige, 334; S. C., 1 N. Y. 298; *Elwood* v. *Deifendorf,* 5 Barb. 398; *Fuller* v. *McEwen,* 17 Ohio St. 288.

In the case of *Towner* v. *Tooley,* 38 Barb. 598, which arose under a will similar to that under examination, it was said that the legacies were an equitable charge on the land, but that before resort could be had to the land the personal property of the devisee should be exhausted.

The case of *Lofton* v. *Moore,* 83 Ind. 112, was between the legatee and devisee, and arose under a will which, in specific terms, bound the real estate devised for the payment of the legacy. The holding was that the devisee was personally liable, and that the legatee might, in the first instance, proceed to collect the legacy by enforcing the lien upon the land.

The case of *Brown* v. *Knapp,* 79 N. Y. 136, arose under a will similar to that in suit. It was said that, " If the devisee accepts the devise, he becomes personally bound to pay the legacy, and he becomes thus bound even if the land devised to him proves to be less in value than the amount of the legacy. If he desires to escape responsibility, he must refuse to accept the devise. If he does accept, he becomes bound to pay the whole amount of the legacy which he is directed to pay."

Under the provisions of the will, and in the light of the above authorities, we think it is very clear that the devisees are personally bound to furnish to Eliza Andrews the support provided in the will, and that she may enforce that liability by suit, even beyond the value of the land devised if necessary, and without resorting to the land at all, if the amount can be made by such suit or suits. Whether the devisees could compel her to thus resort to their personal liability before having resort to the land, if they still owned it, we need not decide.

We think it clear also that the charge upon the land remains an equitable charge upon the fund in the hands of the commissioner and in the custody of the court, and that she may enforce that charge. Especially is this so, as the devi-

sees are liable beyond the value of the land, and are insolvent. She may enforce the personal liability against the devisees, and still look to the land if necessary. See analogous cases, *Gimbel* v. *Stolte*, 59 Ind. 446 ; *Clyde* v. *Simpson*, 4 Ohio St. 445 ; *Milligan* v. *Poole*, 35 Ind. 64 ; *Harris* v. *Fly*, *supra*.

The case last cited involved the rights of parties under a will substantially like that before us. The devisee had suffered the land devised to be sold by the sheriff on an execution. After the purchaser had received a deed, he mortgaged the land. In an action to foreclose the mortgage, the legatees were made defendants. It was held that the legacies were a lien upon the land, and that the legatees were entitled to be paid their legacies out of the proceeds of the sale of the land.

May appellant compel Eliza Andrews to resort to and exhaust that fund, before having resort to the land ? It would seem that, upon principles of equity and good conscience, he ought to have that right. As we have seen, the devisees personally owe the duty of furnishing the support to the legatee. They received the land devised as a compensation for such support. They held the land charged as security for that support. Appellant has paid the full appraised value of the land, without reference to any charge upon it, and, so far as shown, without actual notice. The devisees are insolvent, and hence, at this time, either the fund in the custody of the court, or the land in the hands of appellant, must bear the burden of the support. As between appellant and the devisees, the equity seems clear. No possible harm can come to the legatee by charging the fund as the primary fund for her support. On the other hand, it may result in a positive advantage to her.

In the case of *Clyde* v. *Simpson*, *supra*, it was held that the purchaser of the land from the devisees not only had the right, but that it was his duty to see to it that the purchase-money was applied in payment of the legacy, in order to protect his land.

The case of *Dodge* v. *Manning*, 11 Paige, 334, cited in *Lindsey* v. *Lindsey* and *Burch* v. *Burch*, *supra*, arose under a

will substantially like that before us.   The devisee became the owner under the will of both real and personal property.   He mortgaged the real estate.   The mortgage was foreclosed, and the property sold.   A portion of it was purchased by a third party, with notice, and a part was purchased by the devisee. The legatee filed a bill to enforce the charge on the lands.   It was held that while the legacy was a charge on the land, the personal estate bequeathed was the primary fund for the payment of the legacy, that the devisee was personally liable, and that the portion of the land purchased by him, at the master's sale, should be charged and sold for the payment of the legacy, before the legatee could have recourse upon the land purchased by the third party.   As to that party the bill was dismissed.

This same case came before the Court of Appeals, and is reported in 1 N. Y. 298.   The decision was the same, except that part dismissing the bill.   The court said:   "But the devisee, by accepting the real and personal estate devised and bequeathed to him, became personally liable for the payment of the legacies which the will directed him to pay.   He is therefore primarily liable, and the remedy should first be exhausted against him and the real and personal estate of the testator remaining in his hands, before the respondents should be charged in respect to the real estate purchased by them. If they had purchased expressly subject to the payment of the legacy, that of itself might have made the estate in their hands directly and primarily chargeable.   But I concur with the chancellor that there is nothing in the evidence to justify the inference that they purchased in that manner.   The admission in their answer, as well as the evidence, merely shows that they had notice of the existence of the legacy. * * * * But as the chancellor's decree directs the bill to be dismissed, as to the respondents, with costs, it should be reversed, and a decree should be entered charging the lands purchased by them with the payment of the legacy and costs of suit, so far as there may be a deficiency after the appellant shall have ex-

hausted, her remedy against the defendant, John B. Borst."
Borst was the devisee.

In the same case, in speaking of the rights of the legatee,
who was complainant and purchaser, JEWETT, C. J., said:
" But as between the complainant and the defendants, * * *
they have an equitable right as against her, to insist that she
shall first exhaust her remedy, not only as against Borst per-
sonally, but as against that portion of the property, real and
personal, remaining in his hands, or to which he is entitled,
before she can enforce her lien as against that portion of the
property purchased by them on the sale under the mortgage
foreclosure." On this point, see also the case of *Towner* v.
*Tooley,* 38 Barb. 598, already cited.

In the case of *Elwood* v. *Deifendorf,* 5 Barb. 398, here-
tofore cited, it was held, under a will which devised the land
charged with the payment of the debts of the testator, that
the devisee, by accepting the land, became personally liable to
pay the debts; that the remedy of the creditors must first be
exhausted against the devisee personally, before their lien
could be enforced against the portion of the land in the
hands of the alienee of the devisee, and that the real estate
was liable in the inverse order of its alienation. See, also, 2
Story Eq., sec. 1127.

Many other cases might be cited in support of the equita-
ble doctrine of the above cases. There is clearly no princi-
ple of equity that the devisees can invoke in support of their
claim, that they shall receive the purchase-money for the
land, and leave the whole burden of the support of Eliza
Andrews to rest upon that land and the purchaser of it. Nor
can any equitable or other good reason be given why the
legatee should not be compelled to look to the fund in the
custody of the court before resorting to the land in the hands
of appellant. Neither the record nor counsel inform us
that she objects to this. Her demurrer was filed, possibly,
because of one prayer of the complaint for the quieting of

the title to the land against the charge on it for her support. However this may be, we think that appellant has the right, as against her and the devisees, to have that fund first exhausted, if necessary, in her support, before resort shall be had to the land which he purchased in good faith, and for full value, and he is entitled to such an order and decree as will accomplish this, either by good and sufficient bonds of indemnity from the devisees, or the appointment of a receiver to take and hold the fund now in the custody of the court. Having purchased the interest of two of the devisees, appellant will hold the amount subject to its proportionate share of the support of the legatee. As to her, it is secure, being a charge upon the land. In answer to this, the position of the appellees is that the sale under the partition proceedings was a judicial sale in which there was no warranty, and in which the doctrine of *caveat emptor* applied; and that, therefore, appellant's land must stand for the support and maintenance of the legatee, to the exoneration of the devisees.

We have a line of cases which hold that there is no warranty in judicial sales, and apply the doctrine of *caveat emptor*. But these cases, we think, have not such scope as to overthrow the equitable doctrine we have announced, in its application to this case. On the other hand, we have a line of cases extending from the case of *Muir* v. *Craig*, 3 Blackf. 293, to the case of *Short* v. *Sears*, 93 Ind. 505—over a period of fifty years—which hold that a purchaser of land at a sheriff's sale, to which the judgment defendant has no title, or where the sale is void, may recover from the judgment defendant the amount so paid, or be subrogated to the rights of the judgment creditor. The same rule has been applied to other judicial sales. See *Muir* v. *Berkshire*, 52 Ind. 149; *Westerfield* v. *Williams*, 59 Ind. 221; *Willson* v. *Brown*, 82 Ind. 471.

This line of cases rests upon principles of equity, and is more analogous to the case in hearing than those relied upon

by appellees. In this line the doctrine of *caveat emptor* has not been so extended as to deny a remedy against him who is the real debtor, or who owes the duty.

It has been suggested that there is an apparent conflict between this line of cases and the other, which can not be readily reconciled on principle. *Weakley* v. *Conradt*, 56 Ind. 430. The observation made by Mr. Justice WORDEN, in that case, may be applied generally. It will be observed upon an examination of the two lines of cases, that, generally, protection was given or denied to the purchaser, as the vendors, or those interested as vendors, did or did not owe the debt or duty.

The case of *Henderson* v. *Whitinger*, 56 Ind. 131, is based upon this principle. In that case the land was sold by the administrator. The purchaser defended against one of the notes given for the purchase-money, on the ground that when he purchased the land it was encumbered with taxes, which he had been compelled to pay. The holding in the case, in effect, was that if the taxes had accrued during the life of the intestate, they would have been a charge against him, which it would have been the duty of the administrator to pay, and that, in such case, the purchaser might have availed himself of his payment of them as a defence.

Without further extending this opinion, it follows, from the conclusion we have reached, that the demurrer to the reply must be carried back and sustained to the answer filed in this court, and that the judgment of the court below must be reversed. The judgment is therefore reversed, with costs, and the cause remanded, with instructions to the court below to overrule the demurrer to the complaint, and proceed in accordance with this opinion.

Filed April 25, 1884.