ELLEN WYCKOFF

*v.*

ELIZABETH WYCKOFF et al.

1. A devise of land "to be valued at $90 per acre" amounts merely to giving to the devisee the option of purchasing from the residuary beneficiaries at the price named.

2. Testator devised certain tracts of land to his sons and son-in-law, "to be valued at $90 per acre." He then directed that his executors, who were the three devisees, should each pay an annuity of $70 to the widow in lieu of dower. *Held*, that the devisees took the land charged with the annuity.

3. The charge on the land in such case is not affected by the fact that sufficient personal estate was left to pay the annuity.

Heard on bill, answers and proofs.

*Mr. John L. Connet* and *Messrs. Voorhees & Cotter*, for the complainant.

*Mr. H. Burdett Herr* and *Mr. George H. Large*, for the defendants.

PITNEY, V. C.

The complainant is the widow of John M. Wyckoff, late of the county of Hunterdon, and she seeks by this suit to charge the lands of which he died seized with the payment of an annuity bequeathed to her by his will. He died in 1869, seized and possessed of a considerable estate, consisting of land worth about $14,000, and personal property which netted, after paying all charges, nearly $5,000.

The principal question involved is as to the proper construction of his will, which is as follows:    •

"*First.* It is my will, and I do order, that all my just debts and funeral expenses be duly paid and satisfied as soon as conveniently can be after my decease.

8

"*Item.* I give all my wearing apparel to my two sons, Martin and John, equally.

"*Item.* I grant and devise to my son John V. F. Wyckoff, from my homestead farm, ten acres of woodland on the top of the mountain, to be valued at ninety dollars per acre.

"I grant and devise to my son-in-law Garret C. Garheart, from my homestead farm, eight acres from the top of the mountain, together with the two-acre wood lot I purchased from Peter E. Voorhees, to be valued at ninety dollars per acre.

"I grant and devise to my son Martin Wyckoff my homestead farm, whereon he now resides, together with the balance of the woodland, containing about one hundred and fifty-five acres, more or less, to be valued at ninety dollars per acre.

"*Item.* I do order *my executors*, Martin Wyckoff, Garret C. Garheart and John V. F. Wyckoff, each one to pay, or cause to be paid, unto my beloved wife Ellen, the sum of seventy dollars yearly and every year after my decease during her said widowhood, which said sums is to be her right of dower in my estate; also the use of any household goods that she may want the use of, if she wishes, during her said widowhood.

"*Item.* I do order that all my personal property, *except as before mentioned,* be sold, and all my just debts be paid, and the *balance,* together with all other property, be divided into three equal shares—one share to my son Martin Wyckoff, one share to my daughter Gitty Maria, wife of Garret C. Garheart, one share to my son John V. F. Wyckoff, equally, share and share alike.

"*Lastly.* I hereby appoint my son Martin Wyckoff, my son-in-law Garret C. Garheart, and my son John V. F. Wyckoff, my executors of this my last will and testament."

It was admitted at the hearing, though not alleged in the bill, that the land so devised comprised all the real estate of which the testator died seized, and that the three children named in his will were his only heirs at law. The devises in the will were construed by the beneficiaries of the residue as amounting in effect to several devises to the devisees named upon condition that each should pay to the executors the price named in the will, and that such devises did not take effect unless and until the several devisees paid or satisfied the sum fixed. Or, to state it more simply, that it amounted to giving the several devisees named the option of purchasing from the beneficiaries of the residue the lands specified at the prices named.

I think this was probably the true construction, and that neither of the devisees named could be charged with the amount of the price per acre named until he had assented to and accepted

the devise.  This is the corollary of the rule, that if the devisee accepts the devise subject to a charge he becomes personally responsible for the charge.  *Horning* v. *Wiederspalen, 1 Stew. Eq. 387 ; Dodge* v. *Manning, 1 Comst. 302 ; Porter* v. *Jackson, 4 Am. Pro. Rep. 226, 95 Ind. 210.*

In effect, then, the lands descended to the heirs at law subject to a right given by the will to each of the sons and son-in-law to take certain portions at certain prices, to be paid to the executors and through them to the heirs at law.

But this view of the effect in law of these devises does not affect the right of the complainant in the provision made for her.

Martin Wyckoff declined to accept the devise of the farm to him at the price named, and made a contract with his brother and sister to purchase it at a less price, viz., $12,106, and the brother and sister conveyed it to him by deed. dated April 18th, 1871, with that sum named as the consideration.  He afterwards conveyed it to other parties, and at the filing of the bill the greater part of it was vested in his widow, Elizabeth Wyckoff, the defendant, he having died insolvent.

The allegations and charges of the bill are quite meagre and indistinct.  After setting out the death of the testator, seized of the lands in question, the proof of the will by the three executors, the arrangement between Martin Wyckoff and his brother and sister as to the price he should pay for the homestead and of the conveyance in pursuance of it, the non-payment of the annuity, the several subsequent conveyances of the lands devised to John and Martin, it proceeds to charge that Martin and John have permitted and allowed the sums due from them to fall in arrear, so that there is due from Martin $770, and from John $948 ; and then charges that said sums of money, with interest, together with what should in the future accrue, should be decreed to be a lien and charge upon said real estate so devised to Martin and John, and prays a decree accordingly and a sale in default of payment.

No default is charged against Garheart nor relief prayed against him.  But he is made a party as executor.

No allegation is found in the bill, nor was proof offered at the

hearing, as to the manner in which the consideration named in the deed from John and Mrs. Garheart to Martin for the homestead was arranged between the parties, nor as to whether any of it ever actually came to the hands of the executors.

The proof shows that Garheart, the son-in-law, has paid his· share of the annuity to the widow, but that Martin Wyckoff and John V. F. Wyckoff have failed to pay. Martin stopped paying in 1877, and the effort is to charge the farm conveyed to him. with the payment of the arrears due both from Martin and John,. or at least those due from Martin.

No objection was taken to the frame of the bill on account of multifariousness.

Complainant's counsel rely upon two canons of construction,. which they contend are well established and apply here, and either of which they contend is sufficient to sustain their claim.

The *first* is, that when land is devised to a person, either individually or as executor, and the devisee, either as individual or as trustee, is directed to pay a legacy, such legacy, whether it be a single sum or an annuity, is, by implication, charged upon the land so devised.

*Second.* That where there is a gift of a legacy and a devise of the residue, consisting of both personal and real property in a blended mass, there is a like charge without regard to the sufficiency of the personalty to discharge the legacy.

I will deal only with the first proposition or canon ; and in its support may be cited *Schanck* v. *Arrowsmith, 1 Stock. 314* (at *p. 330*); *Cox* v. *Corkendall, 2 Beas. 138* (at *p. 140*); *Mathewson* v. *Sanders, 11 Conn. 144; Elliot* v. *Hancock, 2 Vern. 143; All-cock* v. *Sparhawk, 2 Vern. 228; Harris* v. *Fly, 7 Paige 421* (at *p. 425*); *Lypert* v. *Carter, 1 Ves. Sr. 499 ; Preston* v. *Preston, 2 Jur. (N. S.) 1040 ; Peacock* v. *Peacock, 34 L. J. Ch. (N. S.) 315,. per* Vice-Chancellor Wood ; *Cross* v. *Kennington, 9 Beav. 150 ; Gallemore* v. *Gill, 2 Sm. & G. 158, 23 L. J. Ch. (N. S.) 604, 8 DeG., M. & G. 567 ; Porter* v. *Jackson, supra.*

I think these authorities do establish the canon in question most clearly, as claimed by the complainant. And the only ·question here is as to its application to the present case; and, so·

applying it, we find an expression of an intention by the testator that his son Martin should have the homestead farm of one hundred and fifty-five acres at the price of $90 per acre, to be paid to his executors, and that he should have one-third of the residue of his estate, of which the price to be paid for the farm was to form a part; and that he must pay the complainant $70 a year. In effect, as I construe it, he said to Martin: " I give you the homestead farm, but you must pay your brother and sister each $30 for each acre of it, and your mother $70 a year during her life." This seems to me to be the actual meaning and effect of the devise to Martin, and, thus interpreted, subjects the land to a charge in favor of the complainant.

Several objections are made to this view and result which I will notice.

*First.* It is said that Martin did not take under the will, but by purchase from his brother and sister. But the answer is obvious; he could not alter the intention of his father, as expressed in his will, by any act of his. And it is the intention of the testator which we have now to deal with; nor could he take the land upon any new terms agreed upon with the other beneficiaries under the will and not assented to by the complainant, without performing the conditions imposed upon him by the devisor.

It is well settled that the canon with which we are now dealing applies to a case of a devise to the heirs at law. *Preston v. Preston, 2 Jur.* (*N. S.*) *1040,* was such a case, and so was the leading case of *Alcock* v. *Sparhawk, 2 Vern. 228,* and *Awbrey* v. *Middleton, 2 Eq. Cas. Abr. 497,* and also the modern cases of *Greville* v. *Browne, 7 H. L. Cas. 689,* and *Porter* v. *Jackson,* above cited. Chancellor Walworth, in *Harris* v. *Fly, 7 Paige 421* (at *p. 427*), says : " The rule as to the equitable charge upon the estate devised is the same where the real estate is devised either to the heir at law or to a stranger upon condition that he pay the legacy. In the first case, though the devise to the heir is void at law, yet in equity it is good as an equitable charge upon the land of the heir who is directed to pay it," citing *Smith* v. *Alterly, Freem. Ch. 136,* which is in point. And where the devise is to an heir

at law who is appointed executor and directed to pay the legacy, a renunciation of the executorship will not affect the lien. *Greville* v. *Brown, Lypert* v. *Carter, supra.*

It is next urged that the direction to pay is against Martin in his capacity of executor:

"I do order my executors, Martin Wyckoff, Garret C. Garheart and John V. F. Wyckoff, each one to pay, or cause to be paid, unto my beloved wife Ellen, the sum of seventy dollars yearly" &c.

If the direction had been that the three executors jointly should pay the whole annuity of $210, and the whole purchase-money had been paid to them, this argument would have had more force, but the devise is not to the executors collectively, but to each severally. The intention of the testator, however, is clear enough. He divides the burden of this annuity equally among the three because the bulk of the estate was divided in those portions, and he intended each share should be charged with one-third. It is true that the lands devised to Garheart and John severally were not sufficient to answer the burden, and Garheart did not receive one-third of the residue, but it was given to his wife; but the personalty, including the price of the land passing through Garheart's hands to his wife, was ample to secure him, and he could see to it that he was secured out of it against the burden cast upon him, so that he would suffer no injustice, and John would receive his share of the residue directly.

It seems to me that the testator expected at least that the executors would severally take advantage of their positions as executors to protect and secure the complainant's legacy to the extent named, and for that reason and purpose put the duty of paying upon them as executors, and that is as far as the argument goes. But, in my judgment, it does not reach far enough to relieve the land, since it is well settled that a charge may well stand both against the land and the person of the devisee. See the cases first above cited.

The principal objection, however, relied upon to the imposition of the charge in this case is, that the personal estate was ample for that purpose, and appeal was made to the general rule, that

the personal estate is the primary fund for the purpose and must first be exhausted before resort is had to the land, and that if there be sufficient personalty the real estate is not charged. But I do not think the rule reaches this case. Here the legacy is given in lieu of dower in the very real estate now sought to be charged, a circumstance which has frequently been noticed as a reason for holding the real estate to be charged, and if the whole annuity were charged on the homestead farm, it would be little, if any, greater than the value of the dower of the complainant in that farm. Then, by the peculiar frame of the will, if strictly carried out, Martin Wyckoff would have received no money, since his share of the whole estate would be less than the value of the farm, and he would be obliged to pay a large sum to the executors, and under the arrangement actually made presumably did pay a large sum over to the executors, or to his brother and sister, and yet he is charged individually, though by his designation of executor, with the payment to complainant of $70 a year.

Again, there is no direction to the executors to set aside a sum of money and put it at interest to raise this annuity, and such course does not seem to have been contemplated by the testator. The frame of the will is consistent with the notion that the testator intended that the entire annuity should be chargeable upon all the lands indiscriminately, and that Martin, as the owner of the farm, which constituted the bulk of the real estate in value, would, in his capacity of executor, be able to protect himself against being charged with more than his share of it by impounding enough money for that purpose.

But the adjudged cases show that the element of a deficiency of personal assets is not, in general, considered in cases arising under the canon in question. *Elliot* v. *Hancock, supra; Francis* v. *Clemow, 23 L. J. Ch. (N. S.) 288, Kay's Rep. 435; Cross* v. *Kennington* and *Browne* v. *Greville, supra,* are instances. And this must be so from the nature of the case, for the devise is to the very party who is charged with the payment. And the meaning of the devise is, that the devisee holds upon the condition that he do pay. Nor is there any distinction between an

annuity and a single payment legacy as to its being a charge. *Gallemore* v. *Gill*, *Greville* v. *Brown*, *supra*, and *Cole* v. *Turner*, *4 Russ. 376*, were cases of annuity.

If, then, this farm was chargeable with the payment of $70 a year to the complainant, in the hands of Martin Wyckoff, I see no reason why it should not be also chargeable in the hands of his grantee. Surely the defendant, Elizabeth Wyckoff, his widow, to whom he, through a third party, conveyed the greater part of it in his lifetime, and who owned it at the time the bill was filed, has shown no equity against such payment. She does not deny notice of the will, or of the non-payment of the annuity. She does not even set up that she paid value.

The answer of the defendant Pidcock, who purchased the larger part of the farm, after bill filed, from Mrs. Elizabeth Wyckoff, is of the same character. The other defendants, who are the present owners of fifteen acres sold off of the farm by Martin, have not answered.

I think the complainant is entitled to a decree, but that the charge against Martin Wyckoff's farm must be confined to the annuity with which he is personally liable, and also the same with regard to the lands devised to John V. F. Wyckoff.