Minshall, J.
The suit below was an action for the recovery of a legacy, brought by the legatee against the administrator of a devisee, who, as is claimed, was personally bound to pay it. ■ Judgment was rendered for the defendant, which, on error, was affirmed by the circuit court and the plaintiff excepted. Error is prosecuted here to reverse both these judgments. The facts are as follows : On October 30,1874, Major Bartholomew died, leaving a will which was shortly afterward admitted to probate and record. By his will he devised to his wife all his personal estate, and an estate for life in one-third of all his real estate, ‘ ‘ save that this day deeded by myself and wife to Benjamin F. Bartholomew, ” and at her death to go to my son, Benjamin F. Bartholomew. Then follows the items on which the question arises in this case, and which are as follows:
“Fourth — I give, bequeath and devise to my son all the remainder of my real estate, being two-thirds of the same, after he shall pay to the heirs of my daughter, Emily Jane Case, the several amounts hereinafter bequeathed to each of said heirs.
“ Fifth — I give and bequeath to the heirs of my deceased daughter, Emily Jane Case, one thousand dollars each, to be paid to each of them by my son, B. F. Bartholomew, as they become twenty-one years of age.” ■ •
*30 On the probate of the will, November 3, 1874, Benjamin took possession of the land devised to him, used and occupied it as his own to the time of his death, receiving all the rents and. profits, amounting to some $13,500. He died April 27,1888, leaving a widow and an only son, Leslie Bartholomew, who died December 1, 1888, intestate and without issue. The heirs of Emily J. Case were her children, eight in number, all of whom became of age and were paid their legacies during the lifetime of Benjamin, except the plaintiff, who became of age March 7, 1890, and W. P. Case, who, though he became of age February 29, 1888, had received but one-half of his legacy.' Hall was duly appointed administrator of Benjamin, accepted the trust and qualified as such; and the plaintiff, on arriving- at age, presented his claim for the payment of his legacy with interest from the time he became of age which was rejected.
Whereupon the plaintiff brought his suit, and the widow of Benjamin having been made a party at the instance of the administrator, both answered. There is, however, no controversy as to the facts, On the death of Leslie, the son of Benjamin, intestate and without issue, the land inherited from his father, passed by descent to his cousins, the heirs of Emily Jane Case, deceased, and of whom the plaintiff is one. His mother took the personalty, and, as widow, was entitled to her portion of that of his father’s estate. The question presented is, whether in view of the facts and the languag-e of the will, the leg-acy bequeathed the plaintiff by the will of his grandfather, became a personal obligation of Benjamin Bartholomew on his accepting the devise of the land made to him. The plaintiff claims -that it did; the defendants *31 claim that it did not; that no personal obligation attached until the time appointed for the payment of the legacy; and this not having arrived until after the death of Benjamin, no personal obligation can be asserted against his estate; and that the plaintiff must look to the land on -which his legacy is simply a charge and no more. This view seems to have prevailed in both the lower courts, but we are unable to adopt it. Whilst many cases may be found in which a question was made as to whether a certain legacy had, by a fair construction ' of the will, been charged on land devised, none has been cited, where, in a case like this, the entire fee simple is devised to one with direction to pay certain legacies, an acceptance of the devise does not, without question, impose a personal obligation on the devisee to pay the legacies. Thus, in Glen v. Fisher, 6 John.,Ch. 33, it is held that, where land is devised charged with the payment of a legacy, and the devisee accepts the devise, he is personally and absolutely liable for the legacy; and he has no right to require of the legatee, before payment, a security to refund, .in case of a deficiency of assets, to pay debts. And in Fuller v. McEwen, 17 Ohio St., 288, this court stated the rule in substantially the same language, and held* that in an action to enforce such personal obligation the fact that the devisee or legatee is or is not also the executor of the will, makes no difference in the case. The rule is also recognized and stated in Yearly v. Long, 40 Ohio St., 27. The rule is thus stated in Porter v. Jackson, 95 Ind., 210: Where lands are devised to one who, by the will, is directed to pay a legacy, the legacy is charged upon the land devised, and when payment of the legacy is made a condition of the devise, its acceptance *32 creates also a personal liability to the legatee which may be enforced without resorting- to the land, the lien still remaining as a security. Many other cases might be cited to the same effect, and are sustained by text writers of standard authority. Woerner Am. Law of Administration, 1099. Williams on Executors, 1704, 1272.
The rule rests upon the reasonable principle, that he who takes a benefit under a will, must take it subject to its provisions; any other construction would necessarily defeat the intention of the testator. So that where a devisee is required to pay legacies to others, an acceptance of the devise imports a promise to pay the legacies; - and the legatees have the right to maintain an action thereon for its non-performance, as though the promise had been made to themselves.
There is, we think, no ground for the contention that the estate in the land, devised to Benjamin, did not vest until the payment of the legacies had been made. Payment is not made a condition precedent to the vesting- of the estate; the effect of the language employed is simply to charge the land as a security for the payment of the legacies. Thompson v. Hoop, 6 Ohio St., 480, 489; Woerner on Administration, 592. Therefore, Benjamin took an estate in fee simple in the land, devised to him, on the death of the testator.
It is claimed, however, that while such is the general rule, the facts bring this case within the principle on which Decker v. Decker, 3 Ohio, 157, was decided, That was regarded by the court as a novel ease. The land was devised by his fathex to Jacob Decker with direction to pay certain legacies at different times in the future to the other children of the testator, with a limitation that if *33 Jacob should die without issue, the estate should go to these other children. By this provision the court held that the devisee took simply a life estate in the land, and that this negatived any intention to make the legacies, before they became due, a personal liability of the devisee. The apparent injustice of charging the devisee personally with the legacies, though the estate might terminate by his death before he received any benefit therefrom, influenced the .court in making the holding that it did. And the judge delivering the opinion observed that: “A devise of the fee, has been considered as sufficient to show an intention in the testator, to create a personal charge, while a devise of any inferior interest, as an estate for life, is taken to indicate an intention to charge the land, and not the person of the devisee.” In the case before us the land was devised in fee, and was of much greater value than the legacies the devisee was required to pay. ' Subject to the payment of the legacies he could deal with it as he pleased, and did so. At his death, it passed by operation of law, to his son as his heir, and not by the provisions of the will of his father; and this marked distinction in the facts clearly distinguishes the case from that of Decker v. Decker. Here the entire subject of the devise became, by its acceptance, the property of the devisee, charged, however, with the payment of the legacies. It went to increase the amount of his estate, less only the sum of the legacies to be paid. The fact that he might die before the time fixed for the payment of any or all of the legacies, was not, under the provisions of the will, in any way, to affect the quantity of his estate in the land. Whether he paid any or all of the legacies during his lifetime, his es *34 tate in the land would be none the less; and it would, and did descend to his heir in fee simple, subject only to the payment of such legacies as had not been paid. Such, without doubt, was the intention of the-testator;'and to give the'will any other construction, would defeat that intention. He designed that his son should have the land, for he in plain terms ■ gives it to him'; but, he also designed that the children of his deceased daughter should have their legacies; as apart of his bounty, for he directs his son, as devisee, to pay them as they attain twenty-one years of age. His son and these children were the immediate objects of his bounty; they were the only ones that concerned him. Pie cannot be supposed to have foreseen all that afterwards happened — the death of his own son, and the heir of the latter, intestate and without issue, before, all of the children of his cle-' ceased daughter had arrived at twenty-one years of age; and to speculate as to what he would have done, had he foreseen these remote contingencies, is useless, as it can shed nó light upon the construction of his will. But it is well, in this connection, to observe, that he had provided liberally for his own son — having given him‘the greater portion of his estate; and no reason is perceived why he should have had 'more- concern for the widow of his son, so provided for, than for those of his own blood, related to him as grandchildren.
But again, it is claimed that the direction being to pay each of the legatees as they became twenty-one years of age, the legacy to e'ach did not vest until the legatee attained that age; and, therefore, that no personal obligation' attached to pay any particular legatee until he attained -the age of twenty-one; and, therefore, the' personal estate of *35 Benjamin is not liable for the payment of the legacy'to the plaintiff, as'he did not attain twenty-one years of age until after the death of Benjamin. It is not necessary, as we- think; to decide whether these legacies vested 'at the death of the testator, or not; though, under the settled rule in such cases, we see no reason for saying that they did not. Bingham on Descents, 59. If they did not, still a conditional liability; personal in character, was created as to each, which became absolute on the legatee attaining the requisite age; the legacy then became an absolute personal liability of the devisee, if living, or of his estate, if dead. Now it is the settled rule of the law that the personalty of an estate is the-primary fund for the satisfaction of all the personal obligations of the'deceased. Williams’ Executors; 1705. And. that it was the personal duty of Benjamin Bartholemew to pay this legacy to the'plaintiff on his arriving at twenty-one-years of age, has- béen already shown to have arisen from-his acceptance of the devise under the will of his father. And although he diegl before the time arrived for ■ making the payment, the obligation attended his estate as an entirety, to be performed by his administrator as his personal representative-. • It frequently happens that a conditional obligation, assumed by a'person in his lifetime,- does not become absolute -until after his death, and- must be,'and is, satisfied bjr his administrator, though not named in the contract. Williams on Executors, 1724. In addition to the- many instances given by this author, the obligation of-a principal to'indemnify his- surety, may be noticed. No absolute obligation arises in such case until the surety has paid the debt, and' this may-be after-the death'of-the‘principal;--And *36 the estate of the principal then becomes liable to indemnify the surety. The case of Camp v. Bostwick, 20 Ohio St., 337, grew out of such a state of facts, and was prosecuted against the heirs for assets received, because the liability of the deceased did not, by the payment of the surety, become absolute until after the administrator had settled the estate, and the suit as to him had become barred.
There remains the further contention, that the legacy of the plaintiff has merged in the legal estate, which, by operation of the law, has descended to him and his brothers and sisters, co-legatees, by the death of Leslie Bartholomew, intestate and without issue. This, we think, is entirely erroneous. It is true, as a general rule, that where the equitable and legal estate unite in the same person in the same right, the former will merge in the latter. But this is simply a rule of convenience to the owner of the two estates, and is never applied where it would be to his interest to treat the equitable interest as subsisting. Here, as shown, the plaintiff has a right to have his legacy satisfied from the personal estate left by Benjamin Bartholomew, though by so doing, it will diminish a fund that would otherwise go to his widow. His right in this regard is that of a creditor of the deceased. The fact that, by inheritance, he with his co-legatees, has become an owner of the land, that may be treated as security for the payment of the legacy, does not change the equity of the case. It is not by any provisions of the will that this has occurred; and the fact, as before shown, cannot, therefore, in any way influence its construction. The condition of the plaintiff is, in law, no way different from what it would have been, had he and his brothers and his sisters pur *37 chased and paid full value for the land. In such case, as it would be to his interest to treat the legacy as existing, though a lien on the land, for the purpose of enabling him to compel it to be satisfied by his debtor, or his estate, the law would treat it as existing for such purpose. The legacy and the lien are not inseparable. The legacy is the principal, the lien is an incident, and may be extinguished by merger in the estate of 'the creditor, although the legacy is not.
Jiodgment of the lower oounrts reversed, and judgment on the pleadings for the plaintiff in error.