Ruffin, C. J.
 

 The first ground, on which it is sought to change Conrad, is, that he was bound to see to the application of the purchase money of the land.
 

 If the case stood on the seventh clause of the will, by itself, and the bill had been filed by the daughters Mary Harris, and Magdalene alone, it would have raised the question, on which opposite opinions have • been expressed in modern times by eminent lawyers : namely, whether a purchaser is bound to see to the application of the purchase money further than to place it in the' hands, which the owner of the estate appointed to receive it. The position is, at least, plausible, that when a trustee
 
 *360
 
 has express authority, to sell land and it is made his duty to receive and distribute the price among particular persons, it should be considered, that, though not expressly conferred, it was intended he should also have the power, upon the receipt of the money, to give the purchaser a discharge. 1 Pow. Mort. 312.
 
 Balfour
 
 v.
 
 Welland,
 
 16 Ves. 156. It is not necessary, however, to embarrass this case with that point, since there are others, on which it is plain that this purchaser was no longer responsible after paying the money to the executors.
 

 The case may be considered first, with respect to the claim of the original plaintiff, Simon Peter Hauser and wife, and their children, on its peculiar grounds The share of the different parts of the property, given for their benefit, was by the third, sixth, and seventh clauses of the will to be left by the executors, or to remain in their hands, on interest, so that the daughter Mary Barbara should have the interest annually for life, and then over to her children. The words “to be left,” or “ to remain in the hands of my executors” may possibly mean, that the executors themselves were to use the money during the daughter’s life and pay her the interest yearly. If so, it would be plain, the intention of the testator could not be, that the purchaser should be responsible for the integrity and solvency of the executors, for he could never expect the land to be sold on these terms — at least, not for any thing like a reasonable price. The testator had confidence in his executors and might have been willing to trust them with the money, which, for the sake of p. provision for his daughter and the family, he was obliged to trust to some one ; but he could not suppose that any stranger would be willing to become answerable for the fund in the hands of the executors for an indefinite period, and, perhaps, to children then unborn. But the fair construction of the will may be, that the money should be laid out in securities bearing interest; by which the am
 
 *361
 
 nual interest would be enjoyed by the daughter and the capital be preserved for her children at her death, If so, the case would bo equally clear for the purchaser. For the will does not direct an investment in any particular securities, so as to afford the purchaser an opportunity of providing, that the money, when leaving his hands, should be laid out in the prescribed securities. It must be implied, then, either that the testator intended, that his estate should be put to the expense of a chancery suit to authorise a sale or order the investments, or that it should be done by the executors in the exercise of an honest discretion. There can be little doubt, that, between the two, the lattter was the intention; and then it cannot be supposed, the purchaser would be expected to look further to the money, after he had paid it into the hands, which were appointed thus to receive and ‘‘manage” the fund. In
 
 Balfour
 
 v.
 
 Welland
 
 there was a trust to sell, and with the money to pay such creditors, as should come in under the deed within a certain period ; and it was held, that there was a discretion in the trustees to make the sale before the creditors were ascertained, among whom the money was to be divided, and, therefore, that the payment of the
 
 money
 
 to the trustees discharged the purchaser, as he could not know to whom it , ought to go. So, in
 
 Doran
 
 v.
 
 Willshire.
 
 3 Swanst. 699, one tract of land was to be sold, and the trustees were to receive and lay out the money in other land, and, until a fit purchase could be made, they were to invest the money in public securities; and the Chancellor held, that a general trust to lay out money was a personal trust, and that it was impossible to suppose it could have been intended to confide it to any stranger, who might happen to buy a part of the real property. If a purchaser were not allowed to pay the money in such a case to the executor, but became entangled in trusts of such duration as those here, and over which he could have no control, it
 
 *362
 
 could hardly be expected that land could ever be sold, unless it belonged exclusively both at law and in equity to the vendor.
 

 But there is still a broader ground, upon which the case is against all the plaintiffs on this point. The first clause in the will directs his executors to pay the testators’ debts out of his “estate,” which of course embraces the present fund, if needed for debts. It has long been settled, that, either upon a trust or a charge, a purchaser is not bound to see that the money is applied either to the payment of debts generally, or to the satisfaction of legacies out of the surplus after the debts are paid.
 
 Humble
 
 v. Bill, 1 Eq. Cas. Ab. 358, 5 Vern. 444;
 
 Williamson
 
 v.
 
 Curtis,
 
 3 Bro. C. C. 96;
 
 Co. Lit.
 
 290;
 
 Butler’s note
 
 1;
 
 Rogers
 
 v.
 
 Shellecom,
 
 Amb. 188, and notes;
 
 Jenkins
 
 v.
 
 Hiles,
 
 6 Ves. 654, note. The reason is, that it would defeat a sale, if the law obliged a purchaser to attend to the execution of a trust so indefinite as the payment of all debts, which he would have no means of ascertaining. Legacies out of the fund, after the debts paid, stand on the same footing; because the purchaser would necessarily have to go through the administration of the assets and see at his risk that the debts were paid, before he could let the legatees have any thing.
 

 In the views hitherto taken, it has been assumed that Conrad'made a fair bargain, and in good faith paid the purchase money to the executors. But the plaintiffs deny those facts; and for that, as a second reason, they seek to charge him in this suit. The bill states, that the executors were largely indebted to Conrad, and that by rheans thereof he had them in his power, and compelled or induced them to sell the land much below its value. But the master does not say any thing on this head, further than to state that Henry Shore, the younger, was at the time of the contract in debt to Conrad about $336. It does not appear, that the price was inadequate, nor that
 
 *363
 
 Lehman owed Conrad a cent; and the answer states' that the price was the full value, and that Conrad’s heirs are willing the plaintiffs should have the land at the same price. That ground therefore fails.
 

 But the plaintiffs further contend, that the mode oí payment, being partly in the debts of the trustee to Conrad, and with a probable knowledge of the executor’s insolvency or embarrassments, and that he was taking up the money for his own uses, entitles the plaintiff to insist on the lands being still a security for their legacies. There is no doubt, that the purchaser’s paying off his debt for the land with the insolvent executor’s debts to him would be a wrongful act, and leave him to make the payment over again, as far as it was made in the executor’s debt, or in any other fraudulent manner. For such a concurrence in the executor’s breach of trust makes the party responsible, as the executor is, on that transaction.
 
 McLeod
 
 v.
 
 Drummond,
 
 17 Ves. 153.
 
 Exum
 
 v.
 
 Bowden,
 
 4 Ire. Eq. 281. The difficulty in the plaintiff’s way is not in the rule of law, but in bringing his case within it upon the facts. It is, however, first to be observed, that the principle cannot apply to the purchaser’s using a debt of the executor, in discharge of his own, to the extent of any interest of the executor himself in the trust fund. For, if he had paid the money, there would have been no moral or legal objection to the executor’s immediately taking his share of it, and paying it back in discharge of his own debt; and this is substantially doing that and no more, provided the debt of the trustee does not exceed his part of the purchase money. Such was the case here. Of the $1400, the two executors, both of whom made the settlement with Conrad, owned two-fiths, amounting to $560, whereas the payment in the debts of the executors’ share was only $474 — being the residue of the purchase money after deducting the cash payment of S926, and being $86 less than the shares of the executors in that part
 
 *364
 
 of the estate. Then, as to the insolvency or embarrassment of Shore, and Conrad’s knowledge of it, or of the misapplication of the money paid to him, the case is barren of evidence. It does not appear in the report, when Shore became insolvent, much less that it was before the payments were made to him, or the settlement; or that Conrad knew it or suspected it or had any reason to suspect it- The master reports nothing on these points, and the plaintiffs have submitted to the report by not excepting to it and allowing it to be confirmed in the Court below. On the other hand, Conrad’s answer is positive, that he paid the money irom time to time, as he got it, in
 
 good
 
 faith, and without a suspicion that the executor was Vcimverting or wished to convert any of it to his own use, as he then was thought to be in easy circumstances and there was no question of his solvency. The answer further states, that the plaintiffs were aware, that he was making the payments to Henry Shore,, and that no one of them intimated a wish, that he should stop them, but acted as if they bad the fullest confidence in the fidelity and solvency of their brothers, the' executors. The whole foundation of the plaintiff's argument on this part of the case, therefore, fails. But it is not seen, that it would have been otherwise, if there bad been a notorious insolvency of the executor. In respect to the question now under consideration, this debt, though arising out of the purchase of land, is like any other debt to the testator or executors. A debtor may and must pay his debt to the executor, solvent or insolvent; and he will be discharged by such payment, unless there be some bad faith in the mode of making it. For, if the testator chooses to appoint an irresponsible man his executor and trustee, it is his own fault aud the consequences must be on his estate. They cannot reach a debtor to the estate, who pays the executor. What else can he do
 
 1
 
 The
 
 executor
 
 may compel payment to him by writ, and therefore it may be
 
 *365
 
 made voluntarily. The debtor is not obliged to continue in debt in order to serve the legatees. He is only to take care, and refrain from concurring in a misapplication of the assets, whether consisting oí his own debt or of property purchased by him from the executor, in order to save a demand he may have on the insolvent executor. That some or all of the debt was paid before the bond fell due, can make no difference ; for the bargain was, that the purchaser might pay as he could, binding himself, however, to pay the whole by January 1822. He would not know, but that the purposes of the estate required the immediate use of the money ; and there was no harm in his getting an abatement of interest for prepayments. and there is no intimation that he got more, ncr, indeed, any evidence that he got that.
 

 The Court, therefore, perceives no reason for impeaching any part of Conrad's dealing, as far as it appears ; and the bill must be dismissed as against his administrators with costs; both those incurred by him and by the administrators.
 

 Per Curiam.
 

 Decree accordingly.