### SMITH v. McINTYRE et al.

(Circuit Court of Appeals, Sixth Circuit.   June 6, 1899.)

No. 600.

**1. WILLS—CONSTRUCTION—POWER TO SELL PROPERTY.**

A will provided that the land of the testator should go to his wife "during her natural life, and all the live stock of every description; also all the household furniture, and all other items not particularly mentioned and otherwise disposed of in this will, during her natural life as aforesaid; she, however, first disposing of a sufficiency thereof to pay my just debts as aforesaid; and at the death of my said wife all the property hereby devised or bequeathed to her as aforesaid, or so much thereof as may then remain unexpended, to my children. * * * And, lastly, I hereby constitute and appoint my wife to be executor for this, my last will." *Held,* that as to the power of disposition given the wife no distinction was made between the personalty and realty, and that such power was not limited to the life estate given her, but extended to the entire title, including the fee of the land.

**2. SAME.**

Such power, being given the wife by name, without any mention of her as executrix until the closing paragraph of the will, vested in her as an individual, and not as executrix.

**3. POWER TO CONVEY LAND—SUFFICIENCY OF EXECUTION.**

A warranty deed, made by a widow, purporting to convey title in fee simple to land which was owned by her deceased husband, and in which his will gave her a life estate, with a power to sell the fee for the payment of debts, must be referred to such power, and is a sufficient execution of it, though it is not mentioned in the deed.

**4. EXECUTORS — SALES OF LAND UNDER POWER FOR PAYMENT OF DEBTS — VALIDITY.**

Where land is sold under a power conferred by will to sell for debts, the purchaser is not bound to inquire whether there are debts in order to be protected in his purchase, unless the time between the death of the testator and the exercise of the power is so great that the purchaser should presume that the debts had all been paid. Where sales were made within seven years, they will not be presumed, after the lapse of 50 years, to have been invalid, in the absence of any evidence as to debts, because of a special statute barring claims unless sued within 4 years from the time the executor qualified, but which contained exceptions in favor of claims maturing thereafter, and others under which sales might legitimately be made in due course after that time.

In Error to the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

This is a writ of error to review a judgment for the defendants in an action to recover real estate lying in Williams county, Ohio. William L. Smith was the common source of title. The defendants claim under deeds made by Margaret Smith, the widow of William L. Smith, during her widowhood, and after she became the wife of her second husband, Alexander Miller. The question in the case turns upon the construction of the will of William L. Smith, the issue being whether the deeds of his widow conveyed a fee in due execution of the power conferred by the will. The will was written by the testator, and was as follows:

"I, William L. Smith, of Williams county, and state of Ohio, do make and publish this, my last will and testament, in manner and form following; that is to say: First. It is my will that my funeral expenses and all my just debts be fully paid. Second. I give, devise, and bequeath to my beloved wife, Margaret, in lieu of her dower, the plantation on which we now reside situated in town seven north, of range four east, in section eight, containing eighty acres, more or less, during her natural life; and all the live stock of every description; also all the household furniture and other items not particularly mentioned and otherwise disposed of in this will, during her natural life, as aforesaid; she, however, first disposing of a sufficiency thereof to pay my just debts as aforesaid. And at the death of my said wife all the property hereby devised or bequeathed to her as aforesaid, or so much thereof as may then remain unexpended, to my children, and their heirs and assigns, forever. And, lastly, I hereby constitute and appoint my wife to be executor for this, my last will and testament, revoking and annulling all former wills by me made, and ratifying and confirming this, and no other, to be my last will and testament.

"William L. Smith. [Seal.]

"Signed and sealed this seventh day of December, eighteen hundred and forty-three, in presence of:
"John Rings.
"Rachel C. Rings."

William L. Smith was a man of some education, who first lived in Richland county, Ohio. Thence he moved to Williams county, where he received title to the land in question. He was a circuit-riding preacher of the Methodist Church of Michigan, Indiana, and Ohio. He taught school three months in the winter, and, when not engaged in preaching or teaching, worked as a farmer upon the land in controversy. He died June 6, 1846, leaving his widow, Margaret, and five children. At the date of the will and at the date of his death William L. Smith had some farm implements, some stock, and some household furniture. The farm, at the time of Smith's death, had about 20 acres of land cleared, and upon it were a log house and a log barn, and, in process of construction, a frame addition to the house. On July 12, 1849, the widow, Margaret Smith, intermarried with Alexander Miller. By the 18th of October, 1852, Margaret had sold, in parcels, all of the real estate devised in the will, executing 21 several warranty deeds, by the tenor whereof, without mention of the will or the power thereunder, she purported to convey in fee simple the premises sold. The considerations paid were equal to the full values of the respective lots. Two of the deeds were made before her second marriage, and were executed in her individual name as grantor, and those made after her marriage were joined in by her husband. In 1853, the family, consisting of Alexander Miller and Margaret Miller, the Smith children, with the exception of the oldest son and the one child of the second marriage, together with George Megarah, Sr., and his wife, Sarah, the parents of Margaret Miller, left Williams county, and moved to a farm near Delta, in Fulton county, which Margaret had acquired by deed of date March, 1853, upon a consideration of $2,100. The parents of Margaret continued to live with her until their death, which occurred August 7, 1854, and March 17, 1855. In the fall of 1855 Margaret sold the farm for $3,500, and moved to Ionia county, Mich. From 1846 to 1853, while the family lived in Williams county, the purchasers of the lots from Margaret erected improvements on the lots thus received. There was

evidence tending to show that the children of Margaret, under whom the plaintiff now claims, knew that Margaret had disposed of the fee-simple interests in the lots, and held conversations about them, and understood that she claimed the right to convey the property under the authority of the will. These conversations were held at a time when all but one of the children were 21 years of age or more. Margaret Miller, the widow of William Smith, died May 2, 1884, and her property was divided among her then living children, Anson L., William T., and Restora J., each receiving $800. The plaintiff is the son of Anson, to whom Anson, William T., and Restora J., have made quitclaim deeds to the land in suit. These deeds were without valuable consideration, the avowed reason for the conveyances being that the grantors were unable to bear the expense of the litigation to recover the property. There was no direct evidence whatever of the amount of debts which William L. Smith left. The occupier of each separate parcel filed an answer. The answers were quite similar. Of the defenses which were set up, one was that George Megarah, the father of Margaret Smith, had paid the entire consideration for the premises conveyed to William L. Smith in consideration of William L. Smith's agreement to support George Megarah and his wife, Sarah, for their life, and to provide them a decent burial at their decease; that, after her husband's death, Margaret did provide the support of said George and Sarah Megarah during life, and a decent burial, in performance of her husband's obligation; and that the sale of these lands was necessary to meet these obligations of the testator, and that the testator's children, under whom the plaintiff claimed, were estopped by their acquiescence in the sales by their mother, the proceeds of which they had fully enjoyed. There was much evidence adduced upon the issue whether Margaret Smith had ever duly qualified as executrix, but, in the view which the court takes of the case, it is unnecessary to set it out.

Orville S. Brumback and Charles A. Thatcher, for plaintiff in error.
E. D. Potter, Jr., and Thomas Emory, for defendants in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

TAFT, Circuit Judge (after stating the facts). The defendants contend that Margaret Smith had power, under the will, to sell the real estate in controversy to pay the debts of her husband, and that the deeds here in question were duly executed in accordance with that power. On behalf of the plaintiff it is urged that the deeds only conveyed Margaret Smith's life estate in the land, and that they did not convey the fee under a power, for the reasons: First, that the power of sale was confined to the personalty; second, that, if it affected the real estate at all, it only authorized the sale of a life estate therein; third, that, even if the power gave the right to sell the land in fee, it was devolved upon Margaret Smith as executrix, and by the statute law of Ohio she ceased to be executrix upon her second marriage, before she executed 19 of the 21 deeds; and, fourth, that the condition precedent to the exercise of the power was the existence of debts, and no debts were shown to exist. The life tenant, William Smith's widow, did not die until 1884. No right of action accrued until that time to the testator's children, and the suit at bar was brought within the 21-years limitation fixed for such suits. The action is not, therefore, barred. Section 4977, Rev. St. Ohio. But the children of William Smith were fully advised that sales were about to be made, and that their mother claimed the right to sell the land in fee. All but one of them were of age at the time of the sales, and might have brought suit to enjoin their mother from

attempting to exercise the power to sell in fee, if in fact she did not have the power, or the condition of its exercise did not exist. If the proceeds of the sales were not used to pay debts, but were used by the mother, the children received from her estate more than the purchase price of the land. The deeds of Margaret Smith were, when this suit was brought, more than 40 years old. The grantees and their successors in title had spent considerable sums in the improvement of the land on the faith that they had acquired a fee. These considerations, while they do not afford either a legal or equitable defense to the action, may properly incline a court, in the case of doubtful language in a will, to a construction of it that will validate the deeds, and the exercise of the power, by which alone they can be supported.

The questions presented are: First, what was the power under the will? and, second, was it personal to the testator's wife, or was it given to her as executrix? If it was given to her as an individual, then the question of her capacity to act as executrix, denied by the plaintiff, becomes immaterial. After directing that his debts and funeral expenses be fully paid, the testator says, "I give, devise, and bequeath to my beloved wife, Margaret, in lieu of her dower," the land in question, "during her natural life, and all the live stock of every description; also all the household furniture and other items not particularly mentioned and otherwise disposed of in this will, during her natural life as aforesaid; she, however, first disposing of a sufficiency thereof to pay my just debts as aforesaid." The testator here gives all his property, real and personal, to his wife for life. He mentions the various kinds, but he treats them all alike. The words "as aforesaid" show that he has in mind the same disposition of the personalty as the realty. He gives everything as a unit. This purpose is emphasized by the gift in remainder to the children, which is of "all the property hereby devised or bequeathed to her as aforesaid, or so much thereof as may then remain unexpended." With this conception of his purpose, it is not hard to determine the meaning of "thereof" in the clause "she first disposing of a sufficiency thereof." It refers to all of his property, a life interest in which he had just given to his wife. It includes personalty as well as realty, for he makes no distinction in his treatment of the two kinds. It includes the absolute interest in the personalty and the fee in the realty, for, if it were confined to the life estate in either, then the words, "so much as may then remain unexpended" would be superfluous, and meaningless. If she had no power to sell more than her life estate, no part of the property devised could be expended or disposed of by her in such a way as to reduce the estate in remainder. We concur, moreover, with the learned judge at the circuit, in the view that it would be altogether unreasonable to suppose that the testator, who manifested so great a desire to give his wife sufficient support during her life, should take only her life interest in his property to pay his debts, and thus relieve his children at the expense of his wife.

Counsel for the plaintiff in error rely with confidence upon the cases of Giles v. Little, 104 U. S. 291; Smith v. Bell, 6 Pet. 68; Brant v. Iron Co., 93 U. S. 326; Taylor v. Bell, 158 Pa. St. 651, 28 Atl.

208; and Green v. Hewitt, 97 Ill. 113,—in their contention that the power to sell is confined to the personalty, or at least to a life interest in the realty. A careful examination of the cases referred to shows that this reliance is misplaced. In Giles v. Little, the testator gave all his estate, real and personal, to his wife, with the power to dispose of the same as to her should seem proper, so long as she remained his widow, on the express condition that, if she married again, all the estate bequeathed, "or whatever may remain," should go to his children. His wife had more property than the testator. The supreme court held that the obvious and chief intention of the testator, to be inferred from his language, read in the light of the circumstances, was to give his wife a life estate during her widowhood, but to save the fee to his children on her death or marriage; that it would plainly defeat such an intention to construe her power to be one of the sale of the fee during her widowhood; and that, in view of this, his main purpose, the court would construe the words "or whatever may remain," as applying only to that part of the personal property which would be consumed in its use, and not to the real estate. The radical distinction between the case cited and the one at bar is that in the former the power of sale or disposition conferred on the wife and life tenant was for her own benefit, and not, as here, for the payment of the debts of the estate of the testator. This circumstance, in the absence of express words to the contrary, necessarily limited the power of sale to that which was the subject-matter of the gift, to wit, the life estate. The natural implication from the words "whatever may remain" was not given effect, because it would have been inconsistent with the clearly expressed chief purpose of the testator to save a fee in all his land to his children after his wife's death or marriage. The other cases cited are to be distinguished from the one in hand in the same way. The purpose of the testator here was to pay his debts, not to enable his wife for her benefit to change the form of her bequests. The only benefit he intended by the power to confer on her was that of selecting the part of his estate to be used in paying his debts. It was certainly a much more efficient mode of paying those debts to sell the property, whether real or personal, outright, than to dispose of only the life estate. The words in the gift of the remainder implying the possibility that the whole property might be reduced by the wife are to be given their full significance, therefore, because it is not, as it was in the cases cited, plainly inconsistent with a contrary purpose, to be inferred from previous language in the will and the circumstances.

The next question to be decided is whether the power of sale is given by the will to Margaret Smith as an individual or as executrix virtute officii. The power of sale is conferred upon her nominatim in the clause giving her a life interest in all the estate of the testator. Then follows the gift in remainder, and finally is the clause, "and, lastly, I hereby constitute and appoint my wife to be executor for this, my last will and testament." We think the power of sale was given to the wife as an individual. It was given to her in order that she, as life tenant, might select that part of the property for sale to pay debts which would least inconvenience her enjoyment of the life interest

in what was left. It was given to her in the clause vesting the life estate in her, and is a qualification of that clause. She is later made executrix, but the appointment is in a separate sentence, which, introduced by the word "lastly," gives the impression that the testator was dealing with a. subject-matter not before touched upon. Had the power been given Margaret Smith by name, followed by the word "executrix," the conclusion in Ohio would doubtless have been that she took it not as an individual, but as executrix, and it would have survived to the administrator with the will annexed, were the executrix to die or resign (Elstner v. Fife, 32 Ohio St. 358, 371), although it would be otherwise in New York, Massachusetts and other states (Conklin v. Egerton's Adm'r, 21 Wend. 430; Tainter v. Clark, 13 Metc. [Mass.] 220; Clark v. Tainter, 7 Cush. 567). But the case is different where the power is given nominatim, and the same person is afterwards made executor. It is true that it is within the ordinary function of an executor to sell the personalty to pay debts, and within his statutory duty to apply to a probate court, if it be necessary to secure the sale of the realty to pay debts under the Ohio statute. It is not, however, within the ordinary function of an executor himself to sell realty to pay debts, and there is nothing strange or unusual in a provision by which the power to sell to pay debts is vested in one person, and the ordinary duty of the executor to use the assets coming into his hands to pay debts is vested in another. It is contended that the case of Mathews v. Meek, 23 Ohio St. 272, must lead to a different conclusion. In that case there was a bequest in trust by the testator to his executors, to be put at interest by them for six years. One of the executors declined the trust, and the other alone qualified, and the question was whether the successor of the qualifying executor with the will annexed succeeded to the management of the trust, and it was held that he did. The court say that:

"As a general rule, the powers of an executor are co-extensive with all the trusts devolved upon him by the will, and all acts done by him in executing such trusts will be regarded as done in his capacity as executor, unless it plainly appears from the whole will that the testator intended to create a special trust to be managed by the person named as executor in the capacity of special trustee."

The present case is a case of a power, and not a trust, and there are some differences between the two; but, leaving those differences out of view, the case cited does not control the one at bar, for the reason that the point in judgment and the language used related to a case where the trust was conferred upon an executor expressly, and not upon an individual, as in the case at bar. No case has been cited to us, and after considerable research we have been able to find none exactly like the case at bar, where a power is conferred upon a person by name, and not as executor, and the person is subsequently made executor. In the case of Houell v. Barnes, Cro. Car. 382, the testator, seised of land in fee, devised it to his wife for life, and afterwards ordered the same "to be sold by his executors hereunder named," and the moneys to be divided among his nephews, and by the will he made William Clerk and Robert Chefly his executors. Clerk died, and the question was whether the power of sale could be exercised

by the surviving executor.  The court held that it might be.  Lord Hale, in the manuscript note in this case, said:

"It is so because they were to sell by reason of office, yet the law stands that authorities shall not survive; and perhaps it had been otherwise, if he had ordered his land to be sold by A. and B., not being named as executors, and one of them had died, for that seems to be a personal trust."

So, in Jenk. Cent. p. 44, the author says:

"At common law, if a man devises that A. and B. shall sell his land, and makes them his executors, the one cannot sell without the other, though one of them should refuse to be executor, or die.  'Tis otherwise if the devise be that his executors shall sell, and he afterwards names A. and B. to be his executors, near the end of his will, and one of them dies; for the naming them in the former part of his will by their proper names annexes a trust in A. and B. to the sale, and appropriates the trust to them as private persons.  It seems to me that if a devise be that A. and B., his executors, shall sell certain land, and near the end of the will he also names them executors, if the one refuses at common law, or dies, the other may sell, for the interest is annexed to the executorship by this repetition in the will."

It is quite possible that under the statutes of Ohio the power to sell might survive to the person appointed to discharge the trust by the probate court, but the authorities cited, though old, are apt to show that the power here imposed on the wife is not a power by virtue of her office as executor, but that it is a power conferred on her to be exercised because she was life tenant.  As the supreme court of Ohio said in Gandolfo v. Walker, 15 Ohio St. 251, 273, in discussing the question whether there was a trust separate from the executorship: "Perhaps no inflexible rule can be safely laid down to show with certainty where the estate ends and the trust begins.  Every case must more or less depend upon its own peculiar circumstances."  All the cases to which we have been referred in which the question is discussed whether a power of sale follows as an incident to the office of executor or is to be treated as separate therefrom, are cases where the power was conferred upon the executors expressly.  Such is the case of Elsner v. Fife, 32 Ohio St. 358.  There is, however, nothing in this or any of the other cases cited which prevents our holding upon this will that the power of sale was conferred upon the wife as life tenant of the property and as an individual, and that she could exercise the power though she ceased to be executor.

The next objection to the title of the defendants made by the plaintiff is that the deeds were not in fact an exercise of a power, because they did not mention it, and purported to be made by the owner of the land.  The deeds were, on their face, conveyances of the fee simple.  They purported to convey, therefore, an interest which the grantor, as owner, had no power to convey.  She had power to convey that interest only by virtue of the power conferred in the will.  There can be no question, therefore, that the grantor intended to exercise, and was exercising, the power conferred by the will.  In the case of Bishop v. Remple, 11 Ohio St. 277, a testator, by a clause in his will, devised and bequeathed to his wife all his property, real and personal, that may remain "after all claims against my estate are satisfied, with full power to have and to hold, to sell or convey, the same during the term of her natural life."  The wife conveyed certain

real estate of the testator by deed in usual form, describing the land, and conveying it in fee simple, and making no reference to the will. The court refused to decide whether the wife had a life estate or a fee simple, and held, even if she had only a life estate, she had power to sell the land in fee, and that the deed was a sufficient execution of the power. After stating the rules governing the validity of the execution of power, Judge Gholson, speaking for the supreme court, says:

"Applying the strictest of these rules, the power in this case may be regarded as well executed. We have no reference to the power, but we have a 'reference to the property which was the subject of it,' and the terms of the deed cannot be satisfied as a consequence of the fee in the property, unless it be considered an execution of the power. This is shown by the circumstances. The property is referred to and described. It was the real estate of the testator, which, by his will, passed into the possession and under the control and power of his wife, who, during her life, makes this deed, describing that property, and undertaking to convey it in fee simple. This act of hers must be operative under the power, or fail altogether, and she must therefore have intended to execute the power. In any view of the rules on the subject, we think the deed may be properly regarded as sufficient execution of the power."

The same doctrine is laid down in Warner v. Insurance Co., 109 U. S. 357, 3 Sup. Ct. 221; Yates v. Clark, 56 Miss. 212; South v. South, 91 Ind. 221; and Blagge v. Miles, 3 Fed. Cas. 559.

Finally, it is objected on behalf of plaintiff in error that the condition precedent to the power of sale was the existence of debts, and the necessity for the sale to pay them, and that neither is made to appear in this case. It is well settled that where an executor or trustee sells land, under a power conferred upon him by will, for the payment of debts, the purchaser is not bound to inquire whether there are any debts in order to be protected in his purchase, unless the time between the death of the testator and the exercise of the power is so great that the purchaser should presume that the debts had all been paid. In Rutherford's Heirs v. Clark's Heirs, 4 Bush, 27, the court of appeals of that state said: "When a will directs the sale of real estate, if necessary for the payment of all the testator's debts or legacies, a purchaser at any such sale, not being presumed to know, or to be able, by reasonable diligence, to know, the condition of the estate, or the extent of its indebtedness or of its assets, should be protected in his purchase whenever made in good faith, without notice, actual or constructive, of the latent fact that there was no necessity for the sale, and consequent want of authority to make it. If this were not so, prudent men would not bid a fair price at such sales." The same rule is laid down in Re Tanqueray-Willaume, 20 Ch. Div. 465; Smith v. Henning, 10 W. Va. 596; Larue's Heirs v. Larue's Ex'r, 3 J. J. Marsh. 156. In accordance with the same doctrine, it is held that the purchaser is not bound to see to the application of the purchase money in such cases. Stroughill v. Anstey, 1 De Gex, M. & G. 635; Ludlow v. Flournoy, 34 Ark. 451; Wright v. Zeigler, 1 Ga. 324; Whitman v. Fisher, 74 Ill. 147; Hauser v. Shore, 40 N. C. 357; 2 Story, Eq. Jur. § 1134; and Sugd. Vend. 659. Farwell on Powers lays down the rule as follows (page 82):

"A purchaser from executors selling under a power of sale created by a charge of debts is not bound, and ought not, to inquire whether there are debts or not, if such sale is made within a reasonable time after the testator's death."

**Lord St. Leonards said, in Stronghill v. Anstey:**

"When a testator, by his will, charges his estate with debts and legacies. he shows that he meant to intrust his trustees or executors with the power of receiving the money, anticipating that there will be debts, and thus providing for the payment of them. It is, by implication, a direction by the testator that he intends to intrust the trustees with the receipt and application of the money, and not to throw any obligation at all upon the purchaser or mortgagee. That intention does not cease because there are no debts. It remains just as much if there are no debts as if there are debts, because the power arises from the circumstance that the debts are provided for, there being in the very creation of the trust a clear indication amounting to a declaration by the testator that he means that the trustees are alone to receive the money, and apply it."

It has been held in Ohio, in the case of Ward's Lessee v. Barrows, 2 Ohio St. 241, that, where a power is given to executors by will to sell and convey land, the power becomes inoperative, and ceases to exist, when the estate is settled, or the claims against it are presumptively settled by lapse of time, and no object of the testator remains to be attained. In that case there was an intervention of more than 30 years between the death of the testator and the deed which was relied upon as an exercise of the power of sale by the executors. In the case In re Tanqueray–Willaume it was held by the court of appeals of England that, after 20 years from the death of the testator, it would be presumed that the power to sell in the executors had become inoperative by reason of the payment or barring of all debts, on the ground that the statute of limitations barred specialties after 20 years. In the case at bar the last of the 21 deeds was executed in 1852, less than seven years after the death of the testator. It is contended that after four years from the appointment of the executor or administrator there was and is a strong presumption under the laws of Ohio that the estate was settled, and all debts were paid, of which all grantees under such a power of sale are bound to take notice. The statute upon which plaintiff relies reads as follows:

"No executor or administrator, after having given notice of his appointment. as provided in the eighty-first section of this act, shall be held to answer to the suit of any creditor of the deceased, unless it be commenced within four years from the time of his giving bond as aforesaid, excepting in the cases hereinafter mentioned: provided, however, that any creditor whose cause of action shall accrue * * * after the expiration of four years from the time that the executor or administrator of such estate shall give * * * bond according to law, and before such estate is fully administered may commence and prosecute such action at any time within one year after the accruing of such cause of action, and before such estate shall have been fully administered; and no cause of action against any executor or administrator shall be adjudged barred by lapse of time until the expiration of one year from the time of the accruing thereof."

This statute bars actions against an executor of solvent estates on claims due within the four years in which judgments are to be levied on assets of the estate coming into his hands during the four years. It does not bar actions against him, judgments in which are to be levied on new assets coming into his hands after the expiration of four years. Section 6114, Rev. St. Ohio; Favorite v. Booher's Adm'r, 17 Ohio St. 548. It does not bar the enforcement of claims against insolvent estates which have been allowed by the executor during the four years. Taylor v. Thorn, 29 Ohio St. 569. It does not bar the

enforcement of a claim against the decedent's devisee where the debts are made by the will a charge upon the land devised, but in such case the ordinary statute of limitations applies. Fuller v. McEwen, 17 Ohio St. 288. The legitimate necessity for a sale of real estate of the decedent under power to sell to pay debts might thus easily arise after four years, because claims may be presented for allowance and payment until the close of the four years, and of claims not due in the four years presentation may be made within one year after they become due. Moreover, the settlement of insolvent estates may be still longer delayed. Taylor v. Thorn, 29 Ohio St. 569. Actions upon specialties and contracts in writing are not barred in Ohio until 15 years after the cause of action accrues. Section 4980, Rev. St. Ohio. We do not think that, in view of the probability that in ordinary course legitimate sales of real estate to pay debts may take place after four years, the summary statute of limitations relied on ought to change the presumption in favor of the validity of sales made by a trustee under a will to pay debts, or that we ought to depart from the analogy followed in England of the general statute of limitations as to specialties. We hold, therefore, that the time which elapsed between the death of the testator and the execution of these deeds was not sufficiently long to raise a presumption that all the debts of the estate had been paid. There is no direct evidence one way or the other whether there were debts or not. It is argued with much emphasis that there could have been no debts large enough to justify the sale of the property, and that this is to be inferred from the circumstances surrounding the testator. The evidence upon this point is most unsatisfactory, and leaves it altogether doubtful whether there were debts or not. After a lapse of 50 years, in such a state of the evidence, the court will certainly not presume against purchasers for value—First, that there were no debts justifying this exercise of the power; and, second, that the persons buying had reason to know that there were no debts. From what has been said it necessarily follows that purchasers from Margaret Smith under her deeds in fee simple took a good title, and that, as the defendants claim under such purchasers, the action of the court below in directing a verdict in their favor was correct. The judgment of the court below is therefore affirmed, with costs.