FRANK N. WEST *vs.* NEW YORK, NEW HAVEN, & HARTFORD RAILROAD COMPANY.

Suffolk. December 4, 1918. — June 18, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Jurisdiction. Venue,* Federal control of local action. *Evidence,* Judicial notice.

Judicial notice will be taken of the provisions of the proclamation of the President of the United States, issued on December 26, 1917, appointing a director general of railroads under the joint resolutions of Congress of April 6 and December 7, 1917, and the first section of the act of Congress approved August 29, 1916, (U. S. St. 1916, c. 418, § 1).

Upon a report by a judge of the Superior Court for determination of the correctness of a ruling by him overruling a plea in abatement to an action of contract begun on April 6, 1918, against the New York, New Haven, and Hartford Railroad Company, the plea setting up in substance that the action was brought in the county of Suffolk, whereas, under "General Order No. 18-A, signed by W. G. McAdoo, Director General of Railroads," it should have been brought either in the county of Dukes County, where the plaintiff resided, or in the State of Connecticut, where the cause of action arose, this court will take judicial notice of the date and of certain provisions of "General Order 18-A," although they are not included in the record nor called to the court's attention by the counsel for the parties.

"General Order 18-A," above described, not having been issued until after the commencement of the action in which the plea in abatement was filed, its provisions could not be relied on in support of the plea.

It appearing that no attachment of property was made in the action in which the plea in abatement above described was filed, so that there was no violation of the proclamation of the President of the United States, above described, which prohibited such an attachment, it was *held* that the bringing of the action in the county where the defendant had a usual place of business violated no federal enactment applicable to the circumstances, and that the plea properly was overruled.

CONTRACT for breach of an alleged agreement by the defendant to employ the plaintiff as a guard during the duration of the war. Writ dated April 6, 1918.

The plaintiff was alleged in the writ to be of Vineyard Haven in the county of Dukes County, and the defendant to be a corporation having a usual place of business in Boston. The writ was returnable in the county of Suffolk.

The defendant filed a plea in abatement reading as follows:

"And now comes the defendant in the above entitled action and says that the plaintiff at the time the suit was brought was residing in Vineyard Haven in the County of Dukes and Commonwealth of Massachusetts, and that the cause of action, if any, accrued in the State of Connecticut; that by General Order No. 18–A, signed by W. G. McAdoo, Director General of Railroads, it is ordered that all suits against carriers while under Federal control must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action or in the county or district where the cause of action arose; and, therefore, the defendant ought not to be held to answer to the plaintiff's writ."

Neither the date nor any other of the provisions of "General Order No. 18–A," referred to in the plea, than that there stated, was stated in the record.

In the Superior Court, the plea was heard by *J. F. Brown,* J., who overruled it "on the ground that the federal government is without authority to regulate procedure in the courts of the various States," and, being of the opinion that the ruling so affected the rights of the parties to the controversy that the matters involved therein ought, before further proceedings, to be determined by this court, reported the question for that purpose, it being stipulated that, if the ruling was right, the defendant should be ordered to answer over, and, if the plea in abatement should be found to be a good defence, that the action should be dismissed.

*S. L. Whipple, W. R. Sears & H. W. Ogden,* for the plaintiff, submitted a brief.

*J. H. Powers,* for the defendant.

BRALEY, J. The defendant's contentions, that the United States unless it consents cannot be impleaded in any court either federal or State, and whether the sovereignty is a party to the litigation is not determined by the nominal party shown by the record but by the effects of the judgment which can be entered, may be con-

ceded as being beyond the pale of successful contradiction. *Public Service Commissioners* v. *New England Telephone & Telegraph Co.* 232 Mass. 465. But the plea in abatement on which it relies to defeat the action recites that the plaintiff at the time the suit was brought resided in "the County of Dukes and . . . that the cause of action, if any, accrued in the State of Connecticut; that by General Order No. 18–A, signed by W. G. McAdoo, Director General of Railroads, it is ordered that all suits against carriers while under federal control must be brought in the county or district where the plaintiff resided at the time of the accrual of the cause of action or in the county or district where the cause of action arose; and therefore, the defendant ought not to be held to answer to the plaintiff's writ." The cause of action according to the declaration accrued July 14, 1917, when the plaintiff who is alleged to have been employed as a guard for the duration of the war was discharged while on duty at the "Connecticut River Bridge," because his services were no longer required by the defendant. The right to damages for breach of this contract is a vested right of property enforceable under the order in the Superior Court for the "County of Dukes County" where in contemplation of law he had his residence. *Bogni* v. *Perotti*, 224 Mass. 152. *Angle* v. *Chicago, St. Paul, Minneapolis & Omaha Railway*, 151 U. S. 1. *Reeder* v. *Holcomb*, 105 Mass. 93. *Hazard* v. *Wason*, 152 Mass. 268.

The trial court under R. L. c. 167, § 14, even if the plea were adjudged good, and this court under St. 1913, c. 716, § 3, could on the plaintiff's motion order the case transferred to the proper county where it could be prosecuted as if duly begun therein and all previous proceedings regularly taken would thereafter be valid.

The presiding judge however overruled the plea "on the ground that the federal government is without authority to regulate procedure in the courts of the various States" and reported the case under the stipulation "that if the ruling is right the defendant be ordered to answer over; and if the plea in abatement be found to be a good defence, that the action be dismissed." See, in this connection as to procedure, R. L. c. 173, § 96, as amended by St. 1906, c. 342, § 2, and St. 1910, c. 555, § 4; R. L. c. 173, § 105, as amended by St. 1910, c. 555, § 5. *Cotter* v. *Nathan & Hurst Co.* 211 Mass. 31.

It therefore becomes necessary to decide whether the order of the Director General deprived the court when sitting for Suffolk County of jurisdiction. The President's proclamation, appointing a director general of railroads under the joint resolutions of Congress passed April 6, 1917, December 7, 1917, and § 1 of the act approved August 29, 1916, was issued December 26, 1917.

The joint resolution of April 6, 1917, reads: "That the state of war between the United States and the Imperial German Government which has been thrust upon the United States is hereby formally declared; and that the President be, and he is hereby, authorized and directed to employ the entire naval and military forces of the United States and the resources of the Government to carry on war against the Imperial German Government; and to bring the conflict to a successful termination all of the resources of the country are hereby pledged by the Congress of the United States." The joint resolution of December 7, 1917, resolved: "That a state of war is hereby declared to exist between the United States of America and the Imperial and Royal Austro-Hungarian Government; and that the President be, and he is hereby, authorized and directed to employ the entire naval and military forces of the United States and the resources of the Government to carry on war against the Imperial and Royal Austro-Hungarian Government; and to bring the conflict to a successful termination all the resources of the country are hereby pledged by the Congress of the United States." And by § 1 of the act approved on August 29, 1916, "The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purpose connected with the emergency as may be needful or desirable."

The proclamation among other provisions contains a clause that "Except with the prior written assent of said Director, no attachment by mesne process or on execution shall be levied on or against any of the property used by any of said transportation systems in the conduct of their business as common carriers; but suits may be brought by and against said carriers and judg-

ments rendered as hitherto until and except so far as said Director may, by general or special orders, otherwise determine."

The proclamation does not purport to limit or restrict the right to bring suit on causes of action then existing until the Director General may by general or special order otherwise determine. It is plain in the absence of such order by the Director General that only the rights of attachment on mesne process and of levy on execution are suspended. While on the record at the date of the plaintiff's writ, April 6, 1918, the Director General apparently had taken full possession and control of the defendant's railroad, the date of the order relied on does not appear. But the President's proclamation is a public act of which all courts are bound to take judicial notice and to which all courts are required to give effect. *Armstrong* v. *United States,* 13 Wall. 154. And the President may direct and empower as in the case at bar a representative to carry out the powers conferred upon him by Congress. The act of the representative is the act of the President. *Wilcox* v. *Jackson,* 13 Pet. 498. *Williams* v. *United States,* 1 How. 290.

We accordingly take notice of the general orders promulgated by the Director General in so far as they are applicable to the present case even if they have not been called to our attention by counsel. *Brown* v. *Piper,* 91 U. S. 37, *Jones* v. *United States,* 137 U. S. 202, *Jenkins* v. *Collard,* 145 U. S. 546, 15 R. C. L. Judicial Notice, § 40, and cases cited in notes 11, 12 and 13. Wigmore on Ev. § 2565. It is settled that notwithstanding its previous delegation of the powers enumerated in the resolves and the statute referred to in the proclamation, Congress in the exercise of its general legislative authority could further provide by any appropriate enactments for the operation of the systems of railroad transportation undertaken pursuant to the proclamation. *M'Culloch* v. *Maryland,* 4 Wheat. 316, 421. *Miller* v. *Mayor of New York,* 109 U. S. 385. *Juilliard* v. *Greenman,* 110 U. S. 421. *Logan* v. *United States,* 144 U. S. 263.

By U. S. St. 1918, c. 25, entitled "An Act to provide for the operation of transportation systems while under Federal control, for the just compensation of their owners, and for other purposes," it is declared by § 10, "That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law,

except in so far as may be inconsistent with the provisions of this
Act or any other Act applicable to such Federal control or with
any order of the President.   Actions at law or suits in equity may
be brought by and against such carriers and judgments rendered
as now provided by law; and in any action at law or suit in equity
against the carrier, no defense shall be made thereto upon the
ground that the carrier is an instrumentality or agency of the
Federal Government.   Nor shall any such carrier be entitled to
have transferred to a Federal court any action heretofore or here-
after instituted by or against it, which action was not so transfer-
able prior to the Federal control of such carrier; and any action
which has heretofore been so transferred because of such Federal
control or of any Act of Congress or official order or proclamation
relating thereto shall upon motion of either party be transferred to
the court in which it was originally instituted.   But no process,
mesne or final, shall be levied against any property under such
Federal control. . . ."

The Director General on April 9, 1918, issued the following order:
"Whereas the Act of Congress approved March 21, 1918 [c. 25],
entitled, 'An Act to provide for the operation of transportation
systems while under Federal control,' provides (sec. 10), 'That
carriers while under Federal control shall be subject to all laws
and liabilities as common carriers, whether arising under State
or Federal laws or at common law, except in so far as may be
inconsistent with the provisions of this Act or with any order
of the President. . . . But no process, mesne or final, shall be
levied against any property under such Federal control'; and

"Whereas it appears that suits against the carriers for personal
injuries, freight and damage claims are being brought in States
and jurisdictions far remote from the place where plaintiffs
reside or where the cause of action arose, the effect thereof being
that men operating the trains engaged in hauling war materials,
troops, munitions, or supplies are required to leave their trains
and attend court as witnesses, and travel sometimes for hundreds
of miles from their work, necessitating absence from their trains
for days and sometimes for a week or more, which practice
is highly prejudicial to the just interests of the Government
and seriously interferes with the physical operation of the rail-
roads, and the practice of suing in remote jurisdictions is not

necessary for the protection of the rights or the just interests of plaintiffs;

"It is therefore ordered, That all suits against carriers while under Federal control must be brought in the county or district where the plaintiff resides or in the county or district where the cause of action arose."

The last paragraph of this order was amended by a general order dated April 18, 1918, designated as 18–A which previously has been quoted. It is to be noticed that the order as amended is based on the act of Congress of March 21, 1918, but the authority of the Director General to act rests on his appointment by the President.

It is manifest, although no attachment or levy can be made, that neither the resolution, the proclamation thereunder, nor the subsequent statute prohibits actions for damages in accordance with the civil procedure prescribed by the States. The order of the Director General having been issued after the plaintiff's action had been begun is therefore inapplicable and the plaintiff could resort to any court of competent jurisdiction for redress although no attachment on mesne process could be made, and if he obtained judgment no execution could be levied on the defendant's property.

It follows that, his cause of action being transitory and not local, the plaintiff can bring suit in this county where the defendant has a usual place of business and under the terms of the report the defendant is to answer over. R. L. c. 167, § 1.

*So ordered.*