ESTATE OF MARY ADELE MORRIS, DECEASED, EVAN MORRIS WILSON, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89458. Promulgated August 30, 1938.

*Wm. Morris Maier, Esq.,* for the petitioner.
*Harold F. Noneman, Esq.,* for the respondent.

OPINION.

Opper: The question here is whether anything "passed" [1] to Evan Morris Wilson by virtue of any general power of appointment exercised by Mary Adele Morris by will or by deed executed in contemplation of or intended to take effect in possession or enjoyment at or after her death.[2] Petitioner contends in effect that the question must be answered in the negative for two reasons—first, because decedent never exercised her power of appointment, and, second, because even if she did the beneficiary took under the will creating the power and no property passed by virtue of the exercise thereof.

It seems to us neither of these contentions can be sustained. Petitioner asserts that it is our duty to resolve the questions of property law in accordance with the principles adopted by the courts of decedent's domicile. *Union & People's National Bank of Jackson et al.,*

---

[1] *Helvering* v. *Grinnell,* 294 U. S. 153.

[2] [Revenue Act of 1926.] Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth; and

\* \* \* \* \* \* \*

*Administrators*, 30 B. T. A. 1277. In this position we concur and accordingly, although with some reluctance, we feel obliged in the present posture of this proceeding to interpret the respective relevant instruments according to our understanding of the law of the State of Pennsylvania. We regard this as unfortunate, particularly since the circumstances giving rise to the question before us were ascertained as early as 1935 and could readily have been litigated long ago had the parties so desired. But we see no alternative, in the absence of submission of the question to the Pennsylvania courts, to an attempt on our own part to forecast what their determination will be should the question ever be presented in that forum.

We conclude that by the instrument of November 16, 1931, decedent effectively exercised the power of appointment conferred upon her by her father's will. She purported to dispose in that instrument of rights to income and corpus not only during the period of her life but specifically and in a fundamentally different manner after her death. Had she been dealing only with her life estate this would of course have been impossible. The instrument was subscribed with all formality. It was executed under seal and apparently before two witnesses. It specifically describes decedent as the donee of the power of appointment and purports to deal with "any remainder or other interest of whatsoever nature that the Grantor has or may hereafter become entitled to under the Will of the said Evan Morris." Most significantly of all perhaps it confers upon the transferees the power to sell any securities or other personal property "and to make good transfers and assignments therefor to the purchaser or purchasers thereof." Had the instrument been effective to transfer only decedent's life interest it seems elementary that the transferees could have disposed of no greater interest in the personal property than they were receiving, that is, an interest for decedent's life. The reference to the transfer of good title would have been futile. To borrow the language of Judge (later Chief Justice) Taft, discussing a power of sale in *Smith* v. *McIntyre*, 95 Fed. 585, 591:

\* \* \* The deeds were, on their face, conveyances of the fee simple. They purported to convey, therefore, an interest which the grantor, as owner, had no power to convey. She had power to convey that interest only by virtue of the power conferred in the will. There can be no question, therefore, that the grantor intended to exercise, and was exercising, the power conferred by the will.

Petitioner contends that in Pennsylvania the donee of a power coupled with a life estate does not thereby obtain a fee. *Warren's Estate*, 320 Pa. 112; 182 Atl. 396. But that case merely held that the donee does not actually have a fee for purposes of the application of the rule against perpetuities. It does not follow that the donee can not create the equivalent of a fee in some third person—that the

original disposition of the estate has not "placed it for all practical purposes as completely within the control of the donee of the power as though a fee had been created in" her. *Lyon* v. *Alexander*, 304 Pa. 288; 156 Atl. 84, and see cases there cited; *Baker* v. *Wilmert*, 288 Ill. 434; 123 N. E. 627; *Atkinson* v. *Dowling*, 33 S. C. 414; 12 S. E. 93.

Petitioner contends that decedent did not purport to exercise her power, but only to relinquish it. He points to the language of the instrument: "releases, relinquishes and extinguishes any power of appointment or disposition she may have over the property above described." We think those words must be construed in connection with their use and in the light of the other provisions of the document. They must be coupled with the following language: "and she further covenants and agrees with the Trustees that she will never under any circumstances or at any time exercise any such power of disposition or appointment or otherwise do any act or thing that will in any way cut down, detract from or affect the absolute indefeasible fee simple title to the property, which is hereby conveyed * * *." The relinquishment and the covenant must, it seems to us, be read together and apply from and after the exercise of the power which by the same instrument the decedent intended to effect. Only by such an interpretation could all of decedent's directions be consummated. "The general rule in determining the validity of the execution of powers is that the intention of the donee to execute is the turning point. * * * The reference to the will * * * is evidence * * * that the will and the donee's power under it were in her mind when making the deed, and, in connection with the fact of conveyance in fee with general warranty, evinces the intent to execute the power." *Scott* v. *Bryan*, 194 Pa. St. 41; 45 Atl. 135, 136 (referring to a power of sale). And only by such an interpretation can the action of the Orphans' Court of Philadelphia County in the settlement of the Evan Morris estate be supported. For not only did the order of that court of December 2, 1931, confirm to decedent's transferees the entire title, remainder as well as life interest, to that part of the Evan Morris estate, but the court characterized the November 16, 1931, transfer as "being in execution by said Mary Adele Morris of her power of testamentary appointment." It is evident that the reference to that document "as an extinguishment of the power of appointment" is a recognition of the interpretation we have suggested for it is followed by the words "so the award will be made accordingly." The award was to decedent's transferees, although decedent was still living, presumably in acknowledgment of the fact that the power had not only been exercised, but irrevocably exercised and thereupon extinguished.

What has been said we think sufficiently disposes of petitioner's further contention that decedent could not have exercised the power

of appointment on November 16, 1931, because the appointment could be made, under the will of the donor, only "by last Will and Testament, or any instrument of writing in the nature thereof." We see no reason why the document executed November 16, 1931, was not, to some extent at least, decedent's last will and testament, why it is impossible that "the instrument was valid as an inter vivos conveyance and also valid as a will" (*Boal* v. *Metropolitan Museum of Art, infra*)—"that the trust instrument, although executed to operate in praesenti as to property transferred to the trustee, was executed animo testandi as to the residue mentioned in the will." *Merrill* v. *Boal*, 47 R. I. 274; 132 Atl. 721. It was in any event "any instrument of writing in the nature thereof", being "a writing, if not with the formalities requisite for a will, at least containing a disposition of property to take effect at the death of the donee." *Trust under Deed of Levering et al.*, 9 D. & C. (Penn.) 328, 331. It could not otherwise have been regarded by the Orphans' Court as an execution of the power of "testamentary appointment." And as petitioner contends, and we have agreed, the views of the courts of Pennsylvania charged with the determination of these questions are the authorities we should follow wherever ascertainable; to say nothing of the further circumstance that the parties necessary to that accounting and the questions presented were such as, in all probability, to make the determination there *res adjudicata*.

To petitioner's further contention that any instrument, and particularly that of November 16, 1931, can not be both a will and a deed, we make the same reply. See *Merrill* v. *Boal, supra*, and cases there cited; *Taylor* v. *Wilder*, 63 Colo. 282; 165 Pac. 766; *In re Murphy's Estate* (Wash.), 75 Pac. (2d) 916; *Boal* v. *Metropolitan Museum of Art*, 19 Fed. (2d) 454. And we have been referred to no Pennsylvania authority to the contrary. True, the instrument was apparently not probated. But it may none the less be either the "will or deed * * * intended to take effect in * * * enjoyment at" her death by which decedent's power of appointment was exercised. It was made effective by the action of the Orphans' Court in the final accounting and distribution of the donor's estate. By its terms it disposed of the estate over which decedent had the power and this disposition became, and was intended to become, operative as of her death. It is stipulated that her transferee continues to hold the corpus on the very trusts she established. Whatever its reasoning, the Orphans' Court has, it seems to us, effectuated her exercise of the power; if by will, it must be assumed probate was unnecessary; if by deed, then it was "a substitute for * * * a disposition by will" and took, and was intended to take, effect at her death. See *Klein* v. *United States* and *Helvering* v. *St. Louis Union Trust Co., infra*.

On October 15, 1934, decedent executed a "last will and testa-

ment." In it she said: "I hereby revoke all former and other Wills by me at any time heretofore made, * * *." It is suggested that if the instrument executed November 16, 1931, was a prior will, it was revoked by the later instrument. Even if this were so, petitioner's argument would not be advanced for then, presumably, the relinquishment of the power contained in that prior will would also be revoked, and decedent by the 1934 will bequeathed "an estate in which I may have an interest or over which I may have a power of appointment" to the chief beneficiary under the 1931 instrument. We prefer, however, to follow the authority cited by petitioner (*Lyon* v. *Alexander, supra,* and other cases cited) and to say, in the language of petitioner's brief, "once having irrevocably extinguished her power to appoint she could not later exercise it by her will or any other instrument, there being none left to exercise." No more could she by that later will revoke any testamentary disposition which she had, for a consideration, declared to be irrevocable. *In re Cridge's Estate,* 289 Pa. 331; 137 Atl. 455; see *In re McGonley's Estate,* 257 Pa. 478; 101 Atl. 807.

We come then to a consideration of the applicability of *Helvering* v. *Grinnell, supra.* In that case the beneficiaries expressly repudiated the appointment and elected to take under the original will. Since then we have held (*James C. Webster et al., Executors,* 38 B. T. A. 273), that a specific renunciation may not be necessary. But here the action taken by the beneficiary was the direct opposite of that in the *Grinnell* case, for in his letter of December 14, 1935, to the corporate trustee under the instrument of November 16, 1931, he said:

* * * I expressly reserve and claim any and all property, rights and benefits that I may have:

*First*—under the provisions of the said Deed of Trust [of November 16, 1931], should the same be adjudicated to be valid in whole or in part, and

*Second*—under the Will of Evan Morris, deceased.

Since there was here an express election to take under the power, it cannot under the doctrine of the *Grinnell* case be said that its exercise was ineffective or that no property passed thereunder. Except where there is an express election to renounce the appointment it has, so far as we know, never been doubted that as a matter of property law an election remains with the beneficiary expressly to invoke the protection flowing from the appointment. In *Helvering* v. *Grinnell, supra,* the Supreme Court quoted with approval from the opinion of the New York Court of Appeals in *Matter of Lansing's Estate,* 182 N. Y. 238; 74 N. E. 882, 884, as follows: "'An appointee under a power' the Court continued, 'has the right of election, the same as a grantee under a deed. * * * *He can accept the title tendered or reject it* in his discretion. * * * His con-

sent is necessary before the attempt to exercise the power becomes binding upon him * * *.' " (Italics added.) For this reason and regardless of subsequent pronouncements by the New York courts in litigation involving the construction of state taxing statutes (see e. g. *Matter of Chauncey*, 102 Misc. 378; 168 N. Y. S. 1019; affirmed without opinion, 175 N. Y. S. 897; *In re Duryea's Estate* (N. Y.), 14 N. E. (2d) 369), we regard the *Grinnell* case as recognizing the existence of the right of election and as establishing the exercise of that election as the test for purposes of estate taxation under the Federal revenue acts.

The absence of any election distinguishes our decision in *James C. Webster et al., Executors, supra.* One other difference in the facts in the two proceedings may be worth mentioning. The codicil in the *Webster* case gave decedent a power of appointment, following which the donor gave and bequeathed "the remainder of said trust fund from and after her death to her children *to whom I now give and bequeath the same subject to such exercise of said power.*" (Emphasis added.) In the present proceeding the will provides "the above provision in favor of children or issue of my said daughters, so surviving their said mother, *is only to take effect in case of failure to so appoint.*" (Emphasis added.) This may be a narrow distinction and one in all probability not always easy to apply. Nevertheless it can not be said to be without significance, for in the *Lansing* case a portion of the opinion not quoted in *Helvering* v. *Grinnell*, discussing *Matter of Cooksey's Estate*, 182 N. Y. 92; 74 N. E. 880, which was decided on the same day, reads as follows: "Moreover, title to the remainder was to vest in them only upon the failure of the mother to appoint. If she exercised the power, they could take under that source only, for they could not take under the will of the grandfather, as Judge Haight shows in his opinion." Apparently then, although this principle was presumably not called to the Supreme Court's attention and certainly is not discussed in its opinion in *Helvering* v. *Grinnell*, there is authority for distinguishing between an estate which is vested but subject to be divested by the appointment of the estate elsewhere, and a remainder or expectant interest which is destroyed by the condition specified, that is, the making of the appointment. In the latter case, the appointment having been the condition and the condition having been fulfilled, there is nothing left for the estate in expectancy; the beneficiaries must take under the power if they take at all; that is the "generating source of the title." See *Klein* v. *United States*, 283 U. S. 231; and cf. *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39. Whether this principle affords a further distinction from our decision in *James C. Webster et al., Executors, supra*, or whether in the absence of any election we should, on such

facts, be compelled to follow the *Grinnell* case, it is not now necessary to determine. Suffice it to say that nothing that is said in the *Webster* case may be regarded as purporting to pass upon the questions here, presented or as going beyond what we now indicate.

We therefore conclude that decedent validly exercised the power of appointment conferred upon her by the donor thereof, that the beneficiary specifically elected to accept its benefits, and accordingly that the property in question passed by the power and is includable in decedent's gross estate.

*Decision will be entered for the respondent.*

